## GEORGE DURDEN

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1901.*

1. COURTS—*one judge cannot delegate judicial authority to another.*
The fact that circuit judges may hold court for each other and
perform each other's duties does not authorize one judge to allow
another to finish the performance of a duty already entered upon
by the former, where such duty involves the exercise of judicial
deliberation upon facts known to the former and not to the latter.

2. CRIMINAL LAW—*permitting another judge to hear arguments and
give instructions is reversible error.* A prisoner on trial for his life is
entitled to the judgment of the judge who has heard the evidence
and conducted the trial, and it is reversible error for the judge
who has heard the evidence and part of the argument to leave the
bench and permit another judge of the same circuit who has not
heard the evidence to hear the remaining arguments, give the in-
structions and receive the verdict.

WRIT OF ERROR to the Circuit Court of Pulaski county;
the Hon. A. K. VICKERS, Judge, presiding.

This is an indictment, returned at the October term,
A. D. 1900, of the circuit court of Pulaski county by a
grand jury, chosen, selected and sworn in and for that
county, against the plaintiff in error, George Durden, for
the murder of one Marshall Hileman on the 26th day of
June, A. D. 1900. The case was tried at the January term,
1901, of said court. The jury returned a verdict finding
plaintiff in error guilty as charged in the indictment, and
fixing his punishment at death. Motions for new trial
and in arrest of judgment were overruled, and on Febru-
ary 25, 1901, the court entered judgment upon the verdict
of the jury, and passed sentence upon plaintiff in error
pursuant to said verdict, and entered an order that he
be executed on Friday, the 12th day of April, A. D. 1901.
This court, at its April term, 1901, ordered that a writ of
error be issued, and that the same be made a *supersedeas.*

H. A. MASON, L. G. CARTER, and H. G. CARTER, for plaintiff in error.

H. J. HAMLIN, Attorney General, and GEORGE E. MARTIN, State's Attorney, (B. D. MONROE, of counsel,) for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Many errors are assigned upon this record, but we deem it necessary to consider only one.

The trial of the case commenced on January 21, 1901, before the Hon. Joseph P. Robarts, one of the judges of the first judicial circuit of the State of Illinois, who heard all the evidence in the case, and the opening argument for the prosecution, and a portion of the arguments of counsel for plaintiff in error, and presided at the trial and conducted the same up to and until the close of the 30th day of January, 1901. On the 30th day of January, 1901, the Hon. Joseph P. Robarts vacated the bench as presiding judge, and left the county of Pulaski; and thereafter took no part in the trial of the cause, nor in any of the other proceedings therein, until the hearing of the motion for a new trial on February 25, 1901, which he overruled. This vacation of the bench was without the knowledge or consent of the plaintiff in error or his counsel, or either of them.

On January 31, 1901, the Hon. A. K. Vickers, another one of the judges of the first judicial circuit of the State, took the place of the Hon. Joseph P. Robarts on the bench, and thereafter acted as the presiding judge in the case against the protest of the plaintiff in error. Hon. A. K. Vickers thereafter heard the closing argument of one of the counsel for plaintiff in error, and the closing argument of the prosecution, and gave all the instructions to the jury which were given, and refused certain

instructions offered by the plaintiff in error. He also received the verdict of the jury, and adjourned court until February, 4, 1901.

There are two bills of exceptions in the cause, one signed by the Hon. Joseph P. Robarts, showing the proceedings taken before him, including the evidence and the overruling of the motions for new trial and in arrest of judgment. Another bill of exceptions is signed by the Hon. A. K. Vickers, showing the proceedings taken before him, including the instructions given to the jury and the instructions refused, and also the return of the verdict by the jury.

The bill of exceptions signed by the Hon. A. K. Vickers shows, among other things, the following proceedings, to-wit:

"Be it remembered that, during the progress of this trial and on the 31st day of January, A. D. 1901, the Hon. A. K. Vickers, judge, takes the place of the Hon. Joseph P. Robarts on the bench, said exchange of judges occurring during the closing argument on behalf of the defendant, and said Hon. A. K. Vickers, judge, so presiding, made the following rulings, during the progress of said trial, that is to say: * * * Now, on this day, 31st day of January, A. D. 1901, being the tenth day since the commencement of the trial of this case, comes the defendant and objects to the action of the Hon. Joseph P. Robarts this day, without the consent of this defendant or any notice to him, vacating the bench at this stage of the proceedings and placing thereon another judge to preside in his place; and he also objects to the court reporter absenting himself with his notes of the evidence in this case without the knowledge or consent of this defendant; and exception is hereby taken by George Durden, defendant in this case."

The bill of exceptions shows the order of court overruling defendant's objections, as above made, and exceptions thereto. It then recites that the trial proceeded

before the Hon. A. K. Vickers, judge, and the argument was concluded. It further recites as follows: "And thereupon the court gave and read to the jury for and on behalf of the People, plaintiff, the following instructions over the objections of the defendant, to-wit:" then follow twenty instructions given to the jury by the Hon. A. K. Vickers for and on behalf of the People, each of which is marked "given." Exceptions were taken by the defendant to the giving of each of said last named instructions. The bill of exceptions then proceeds to recite as follows: "And thereupon the court for and on behalf of the defendant read to the jury the instructions following, which said instructions had before that time been passed upon, approved and marked given by the Hon. Joseph P. Robarts while presiding upon the trial of said cause, and before the said Hon. A. K. Vickers came to preside upon said trial." Then follow instructions numbered from 1 to 18 inclusive, given and read to the jury for and on behalf of the plaintiff in error.

The bill of exceptions then recites that plaintiff in error, by his counsel, then and there asked the court to also give and read to the jury instructions, numbered 19 and 20, for and on behalf of the plaintiff in error, but that the court refused to give and read the said instructions to the jury, to which refusal plaintiff in error, by his counsel, then and there excepted. The court then gave to the jury instructions in regard to the form of their verdict.

The bill of exceptions, signed by Judge Vickers, closes as follows: "And upon the return by said jury of said verdict, the defendant then and there by his counsel excepted to said verdict, and moved the court to set aside said verdict and grant the defendant a new trial in said cause, whereupon the said presiding judge, A. K. Vickers, stated that Hon. Joseph P. Robarts, one of the judges who had presided at this trial, would consider the motion for a new trial on Monday, February 4, A. D. 1901,

whereupon the said circuit court was adjourned to the fourth day of February, A. D. 1901."

The foregoing proceedings, consisting of the vacation of the bench by Judge Robarts, and the conduct of the trial thereafter by Judge Vickers, are assigned as error by the plaintiff in error.

Several significant facts are involved in this assignment of error. Before the trial of the case was concluded, and before the argument in favor of the prisoner was finished, the judge who had presided at the trial up to that time left the bench, and another judge who, so far as this record shows, knew nothing about the proceedings which had taken place up to that time, took his place upon the bench, and presided during the rest of the trial, and gave the instructions to the jury, and received the verdict.

It appears from the bill of exceptions, that the instructions, which were given for the defendant, had been passed upon and marked "given" by Judge Robarts before he left the bench. They were read to the jury by Judge Vickers. Judge Vickers, however, gave and read to the jury all the instructions which were given for the State, and himself passed upon the same, and approved of the same, and marked the same "given." We regard this assignment of error as being well taken. It requires a reversal of the cause, and therefore we pass no opinion upon the facts.

It is well settled that "the argument of a cause is as much a part of the trial as the hearing of evidence." (*Meredeth* v. *People*, 84 Ill. 479; *Thompson* v. *People*, 144 id. 378; *State of Iowa* v. *Carnagy*, 106 Iowa, 487; *Ellerbe* v. *State*, 75 Miss. 527; *State* v. *Beuerman*, 59 Kan. 591). It is also a general rule, established by the weight of authority, that, in prosecutions for felonies, the continual presence of the judge during the entire course of the trial is essential; and it is expressly held in many decisions that, in the trial of capital cases, the judge should not retire from the bench, even for a brief absence, without order-

ing a suspension of business until his return. (21 Ency. of Pl. & Pr. pp. 978, 979, and cases referred to in notes).

It is claimed here, however, on the part of the State, that, during the trial of this case, the bench was at no time vacant, because, as soon as one circuit judge left the bench, another circuit judge, having equal power and belonging to the same circuit, took his place. The court, it is said, was the same during the whole of the trial, although two different persons presided during the trial at different times. In justification of the proceeding here under consideration section 62 of chapter 37 of our statutes, entitled "Courts," is referred to. That section provides that "judges of the several circuit courts of this State may interchange with each other and * * * may hold court or any branch of the court for each other, and perform each other's duties, where they find it necessary or convenient." (1 Starr & Curt. Ann. Stat.—2d ed.— p. 1160). The vacation and substitution, which took place in this case, find no justification in the section thus referred to.

A prisoner on trial for his life is entitled to the judgment of the judge, who has heard the evidence in the case, and conducted the trial thereof. The instructions given by a judge must be based upon the facts, and necessarily involve an application of the law to the particular facts of the case. Here, the instructions given for the State were given by a judge who heard none of the evidence. Two instructions asked by the defendant were refused by a judge who heard none of the evidence. It is true, that the absence of one judge from the bench before the close of the trial was followed by the presence of another judge of equal power and jurisdiction. It is also true, that circuit judges may hold court for each other and perform each other's duties where they find it necessary or convenient. But this does not involve the right or power of one judge to finish for another the performance of a duty already entered upon by the latter,

when that duty involves the exercise of judgment and the application of legal knowledge and judicial deliberation to facts known to the latter and not known to the former.

It is a well settled principle of law that a judge can not delegate his judicial authority to another. (*Ellerbe* v. *State, supra*). In *Davis* v. *Wilson,* 65 Ill. 525, we said: "Judicial functions cannot be delegated to or exercised by an agent or deputy." Where a cause has been submitted to a judge upon the law and facts, as argued by counsel, for his consideration and determination, he can not delegate to another judge the consideration and determination of that case, even though the latter possesses the same or equal judicial power. In the case at bar, the instructions, given for the plaintiff in error, were passed upon and approved by Judge Robarts before he left the bench and marked "given" by him. The reading of these instructions to the jury was delegated by him to another judge, who had not heard the evidence, nor even all of the arguments made in the case. The task of passing upon the instructions offered in behalf of the State was not only abandoned by Judge Robarts, but was delegated by him to Judge Vickers, who had not heard the evidence to which the instructions in question were to be applied.

It appears in this case that, during the closing argument of the State's attorney to the jury and while Judge Vickers was upon the bench, a dispute arose between counsel as to the testimony of one of the witnesses, and the judge on the bench replied that he could not say what the evidence was. To this the plaintiff in error excepted. This shows the danger of allowing a judge to preside during the closing argument of a cause when he has no knowledge of what the testimony in the case was.

In none of the authorities to which we have been referred are the facts precisely similar to the facts in this case.

In *Meredeth* v. *People*, 84 Ill. 479, which was an indictment for murder, the judge of the circuit court was absent from the court room during the trial of the cause by consent of counsel for the defense, and was engaged elsewhere in the performance of other official duties, and, during his absence, his place upon the bench was occupied successively by two members of the bar; and it was there held to be error for the judge, before whom a case was on trial, to leave the court room whilst the cause was being argued before the jury, and that the judge should not, even by consent of the parties, be elsewhere employed.   In the *Meredeth case* we said (p. 482): "The absence of the judge from the court room, engaged in other judicial labors, for a part of two days, in a trial of this magnitude, cannot be justified on any principle or for any cause.   It is not allowable in a trial involving only mere property interests, much less in a case where the life of a human being depends upon the issue."   In *Thompson* v. *People*, 144 Ill. 378, we said (p. 381): "On the trial of a criminal case before a jury the defendant has a right to be heard before the jury in person or by counsel as he may elect, and the People have a right to be heard through the State's attorney or such other person as may be selected for that purpose.   This is a right guaranteed by law.   Indeed, the argument before the jury is a part of the trial of a cause, as well as the introduction of evidence to prove the innocence or guilt of a defendant or any other fact at issue on the trial.   If the presiding judge may leave the court room and engage in other business during the argument before the jury, he may upon the same ground leave while the evidence is being introduced during the progress of the trial at any other stage of the proceeding.   Under our system of practice in the circuit court, during the progress of any judicial proceeding, the law requires a presiding judge to sit during each and every stage of such proceeding.   *   *   *   No part of the closing argument for the State was heard,

and although several objections were made to different portions of the argument, they were not, on account of the absence of the judge from the court room, passed upon or decided. Under the law the defendant, who was on trial for a serious crime, one which deprived him of his liberty, had the right to the presence of the presiding judge during the argument of the case before the jury, and the absence of the judge was, in our opinion, an error of sufficient magnitude to reverse the judgment." In our view, it makes no difference that another circuit judge of equal power and jurisdiction was presiding in place of the absent judge, if he had no such knowledge of the testimony, already given upon the witness stand, and of the proceedings, already taken in the cause, as to be able to direct and control the arguments of counsel when they pass beyond proper limits, and to determine whether or not the instructions to be given to the jury are based upon the evidence already heard in the presence of the jury.

In *Hall* v. *Hamilton,* 74 Ill. 437, we said (p. 440): "One judge may settle a portion of the pleadings, or decide motions in a case, and another judge may settle other portions of the pleadings and decide other motions, and another judge may try the case, or all may be done by one judge, so the record shows what was done by each judge in the case." The statement here made, that "another judge may try the case," is inconsistent with the contention that two judges may try the case. (See also *Courson* v. *Browning,* 78 Ill. 208).

Certain cases are referred to by counsel for the People, which are alleged to hold views inconsistent with those thus far expressed; but when they are carefully examined, such inconsistency will be found not to exist. In *Chicago, Pekin and Southwestern Railroad Co.* v. *Town of Marseilles,* 107 Ill. 313, it appeared that the trial was conducted before one judge, and no motion for a new trial was made when the verdict was rendered, but, during the trial term, the unsuccessful party entered a motion

for a new trial before a judge other than the one who presided at the trial of the cause, and it was held that the latter judge had rightful authority to deny the motion, and that it was not error to do so. In the *Marseilles case*, however, while it appeared that one judge presided at the trial and another passed on the motion for a new trial, it did not appear that two judges presided on the trial itself, and that the evidence and a part of the arguments were heard by one judge, and the rest of the arguments were listened to by another judge, and that the instructions were prepared by two different judges and read to the jury by a judge, who never heard the evidence in the cause. In *People* v. *McConnell*, 155 Ill. 192, the question was as to the power of one judge to decide a motion for a new trial, where the judge, who tried the cause, had died after verdict, and pending a motion for new trial. That is an entirely different question from the one here involved.

Counsel for the State refer to a statement in Bishop on New Criminal Procedure, (vol. 1, sec. 314, par. 7,) where it is said: "The court and judge are distinguishable; so that one judge may try a prisoner and another sentence him, and this principle applies to various like questions of judicial changes and substitutes." The statement of the text writer is based upon two cases, to-wit, *Pegalow* v. *State*, 20 Wis. 61, and *Charles* v. *State*, 4 Porter, 107. In *Pegalow* v. *State*, *supra*, the circuit judge, before whom the plaintiff in error was tried and convicted, had gone out of office, and had been succeeded by another judge who pronounced judgment upon the verdict; and the question arising upon the record was, whether the circuit judge had power to pass sentence upon a prisoner convicted before his predecessor in office; and it was there held that he had such power; but, there, the plaintiff in error was convicted of murder in the first degree, and the statute fixed the penalty for the crime, so that nothing was left to the discretion of the court. In *Pegalow's case* it

is said: "Where a discretion was given, there might be some reason for saying that the judge who pronounced the sentence should be acquainted with the circumstances of the case as disclosed at the trial, in order to award the proper degree of punishment. But no such reason can apply here." In the case at bar, the judge, who succeeded the trial judge, exercised a discretion and judgment as to the instructions to be given, and, hence, under the doctrine of the *Pegalow case*, it was necessary for him to "be acquainted with the circumstances of the case as disclosed at the trial."

In *Charles* v. *State*, *supra*, where a verdict of guilty was rendered in a criminal case, and the court adjourned without giving judgment thereon, it was held that a different judge, presiding at a different term, had power to render the judgment which the first court should have given, but, there, it appeared that, before the next term of the court, the judge, who presided on the trial of the indictment, had died. In the case at bar, there was no death, nor sickness, which justified the judge, who conducted the trial, in vacating the bench. It does not appear for what reason he abandoned the trial of the cause and turned it over to another judge. But, even if he went into another county in order to attend to other business upon his circuit, as is alleged by the Attorney General, there was no official business, which more properly demanded his attention than the trial in hand, which involved the life of a human being.

The case of *Watkins* v. *Paine*, 57 Ga. 50, has no application here, because that was a case where a motion for a new trial was made before the successor of the judge who had heard the case, and the court held that such successor might legally pass upon the motion.

In *Bullock* v. *Neal*, 42 Ark. 279, the judge at a trial became sick, and unable to preside, after the evidence was all in and the instructions had been given to the jury, and it was there held that the trial should proceed under

a·special judge before the same jury, and without rehearing the testimony. (See also 17 Am. & Eng. Ency. of Law,—2d ed.—p. 721). That case, however, differs from the case at bar, because there the instructions had been given to the jury by the trial judge before the special judge took his·seat on the bench, while, here, most of the instructions were passed upon and all were given by the substituted judge.

The course of decision in the State of New York is in favor of the position that a judge, who has not heard the evidence in the case, is not qualified to take part in the proceedings of the court. In *Shaw* v. *People*, 3 Hun, 279, it appeared that, under the law, the court was composed of a justice of the Supreme Court, who presided, and of the county judge and two justices of the peace; that several days were devoted to the taking of evidence, when an adjournment over Sunday was had, and,·during the adjournment, one of the justices absented himself and continued absent during the whole of Monday; and, on Tuesday morning, without having heard the evidence given on Monday, and without having read it, and without the evidence being again given, resumed his seat upon the bench and took part in the deliberations of the court during the rest of the trial; and it was there held that he was not qualified to take part in the proceedings of the court. In *Shaw* v. *People, supra,* it was said in reference to the justice thus absenting himself: "His vote and voice upon any question arising upon the trial after his return may have produced a different result from what they would, had he remained during the whole trial, heard the whole evidence and given his reflective judgment to it, preparatory to voting and speaking in the deliberations which ensued after his return to the bench which he had, as to the parts of the trial which took place on Monday, vacated and abandoned. It is not for us to speculate, in a case where the life of a prisoner is involved, as to the extent of the influence of the vote and

voice of one who has not heard the whole evidence. The prisoner is entitled to the full benefit of the understanding and judgment of those who take part in the judicial deliberations which affect his life; he is entitled to all the forms of law, to all the provisions of the constitution by which his rights are secured. Where life is involved, the law humanely provides that the prisoner stands upon all his rights, and does not and cannot waive them. * * * It may be said to be erroneous for a member of the court to take part in the deliberation, consultation and rulings, when he has not heard the whole evidence given upon the trial. * * * It certainly is against public policy to allow a party to be deprived of his life by a tribunal, of which it can be said, that a portion thereof has not heard the whole evidence and proceedings which result in the sentence of death."

So, in the case at bar, this plaintiff in error was entitled to the full benefit of the understanding and judgment of the judge, who heard the evidence and conducted the trial up to the time of the making of the closing arguments. Here, the trial was conducted by two judges, one succeeding the other, and, here also, as was the case in *Shaw* v. *People, supra*, it is against public policy to allow this plaintiff in error to be deprived of his life by a tribunal, of which one of the sitting judges did not hear the whole evidence and proceedings resulting in the sentence of death against him. The decision in *Shaw* v. *People, supra*, as rendered by the Supreme Court of New York, was affirmed by the Court of Appeals of the State of New York in *People* v. *Shaw*, 63 N. Y. 39, where it is said: "After the trial had progressed several days, Justice Steere absented himself from the court for an entire day, during which the trial proceeded and evidence was taken. * * * He did return and took part in the subsequent proceedings. This the general term decided, for the very cogent reasons, and upon the authorities * * * stated by Judge Hardin, was error."

In *Blend* v. *People*, 41 N. Y. 604, where it appeared that the trial proceeded before a legal tribunal consisting of the county judge and two associate justices, and one of the justices abandoned the bench during the trial and another justice took his place, it was said: "This is not the case where a member of the court leaves the bench for a few moments, intending to return, and does return, but a total abandonment of the trial, in consequence of which one-third of the court is changed; and it is not for us to speculate in regard to the probable injury which might result from the substitution of Davidson; it is sufficient that the prisoner had a right to insist that his trial should proceed before the same court before which it was commenced. It is insisted by the counsel for the defendants in error, that no possible injury could result to the prisoner in consequence of such change. We have no means of determining that question, as we are unable to ascertain from the facts before us, what influence Elwood (who abandoned the trial) might have exercised during the trial or in determining the punishment to be inflicted upon the prisoner."

In the case at bar, we think that the plaintiff in error had a right to insist that his trial should proceed before the same judge before whom it was commenced. It is not sufficient that the court or the tribunal was the same by the substitution of another judge of equal power. Section 51 of the Practice act provides that "the court, in charging the jury, shall only instruct as to the law of the case." (3 Starr & Curt. Ann. Stat.—2d ed.—p. 3045). And section 52 of the same act provides as follows: "Hereafter no judge shall instruct the petit jury in any case, civil or criminal, unless such instructions are reduced to writing." (Ibid. p. 3047). Section 53 provides as follows: "And when instructions are asked which the judge cannot give, he shall, on the margin thereof, write the word 'refused'; and such as he approves he shall write, on the margin thereof, the word 'given'; and he

shall in no case, after instructions are given, qualify, modify, or in any manner explain the same to the jury otherwise than in writing. Exceptions to the giving or re- fusing any instructions may be entered at any time before the entry of final judgment in the case." (Ibid. p. 3048). It will be noticed that in sections 52 and 53 the word "judge" is used in place of the word "court" which ap- pears in section 51. It is the particular person presiding as judge, and not the court as a tribunal, who, under section 53, is required to mark the word "given" upon instructions which he approves and the word "refused" upon instructions which he refuses. The words "the judge," as used in section 53, refer to the presiding judge, or the judge who has heard the evidence and has con- ducted the trial. A single judge is there referred to, and there is no reference to more than one judge. The lan- guage of section 53 excludes the idea that more than one judge can participate in passing upon the instructions to be given to the jury, or that any other judge can pass upon such instructions than the one who has heard the evidence and conducted the trial.

It is impossible for us to say that no injury resulted to this plaintiff in error from the substitution, in the manner heretofore indicated, of one judge for another during the trial of the cause. This was done over the objection and against the protest of the counsel of plain- tiff in error, made in the presence of the jury. It cannot be known what impression this change may have made upon the minds of the jury to the prejudice of the plain- tiff in error. In *Smith* v. *Sherwood*, 95 Wis. 560, it was said: "The presiding judge of a trial court is charged with the duty of trying the case from the opening to the close, and he ought not to abdicate his functions even for half an hour. * * * We cannot but regard this long ab- sence from the bench during an important part of the trial as an error which calls for a new trial. We feel that we should be doing wrong to sanction any such practice.

Such a rule, once established, would open the way to dangerous abuses and break down one of the most valuable safeguards to litigants."

In *People* v. *McPherson*, 74 Hun, 336, it was held that a criminal case cannot be partly tried before one magistrate and partly before another, and it was there said: "The proposition that a criminal case cannot be partly tried before one magistrate and partly before another seems to me too clear to need argument or citation of authority to sustain it. When the trial of a case is once commenced it must proceed to the end before the same court and jury." In *O'Brien* v. *People*, 17 Col. 561, it was said: "Moreover, the presence of the judge is essential to the organization of a court for the trial of felony cases. If the judge is absent while substantial proceedings, such as the taking of evidence or the argument of counsel, are being carried on in the presence of the trial jury, such proceedings must be regarded as *coram non judice;* and if, as in this case, it affirmatively appears by the bill of exceptions that the judge was absent against the objections of the defendant, his absence must be held ground for reversal." (See also *People* v. *Eckert*, 16 Cal. 110; *State* v. *Smith*, 49 Conn. 383; *State of Iowa* v. *Carnagy, supra; State* v. *Beuerman, supra; Palin* v. *State*, 38 Neb. 862).

While, in the case at bar, there was a judge present on the bench during all of the trial, yet the judge, who heard the evidence, absented himself from the bench before the trial was concluded. The plaintiff in error was entitled to his judgment upon the law and the facts up to the time of the retirement of the jury to consider of their verdict. Hence, when he was absent from the bench, the authorities, which hold that absence from the bench is error such as justifies a reversal, are strictly applicable to his conduct. His absence was not excused by the fact that another judge, not familiar with the evidence, instructed the jury and received the verdict. The injury, which may have inured to the interests of the plaintiff

in error, was not counterbalanced by the presence of a new and outside presiding officer.

For the reasons above stated, the judgment of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.          *Reversed and remanded.*