[No. 216-41381-2.   Division Two.   December 18, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. HENRY LYLE ADAMS, *Appellant.*

*John H. Sennhauser,* for appellant.

*Jerome Buzzard, Prosecuting Attorney,* and *Stanbery Foster, Jr., Deputy,* for respondent.

PETRIE, J.—Henry Lyle Adams was arrested in September, 1968, as an aftermath of his activities during a series of public demonstrations in support of Indian fishing rights in the lower Puget Sound region. By information, he was charged in count 1 with violation of RCW 75.12.060[1] on

---

[1] RCW 75.12.060 provides, in part: "It shall be unlawful to . . . use . . . within any waters of the state any . . . set net . . . or any fixed appliance for the purpose of catching salmon, and it shall be unlawful to take salmon by any such means."

September 6, 1968; and in count 2 with violation of WAC 220-47-020[2] on September 8, 1968.

At trial, the defendant appeared pro se, waived jury trial, and was found guilty by the court on both counts. He has appealed from judgment and sentence entered thereon.

The Supreme Court has but recently decided that WAC 220-47-020 was invalidly promulgated—and therefore void. *State v. Squally*, 78 W.D.2d 475, 474 P.2d 897 (1970). Hence his conviction on count 2 of the information must be reversed.

There remain only the assignments of error relating to the charge of the use of a set net for the purpose of catching salmon in violation of RCW 75.12.060. While appellant admits that he was using a set net in the waters of Puget Sound, he declares that his only purpose was to demonstrate the irrationality of the statutes prohibiting the use of set nets. He, therefore, contends that his action was "symbolic speech" protected by the first amendment to the United States Constitution.

As a preface to analysis of this theory, we pause to indicate that the court's determination that both the statutes and the regulations cited were reasonable and necessary for conservation purpose is amply supported by the evidence.

■■ The question raised is simply whether the defendant's action was "symbolic speech" protected by the First Amendment. Accepting, arguendo, the appellant's characterization of his act as "symbolic speech", it does not automatically follow that such act is entitled to the protec-

---

[2]*WAC 220-47-020* provides, in part: "It shall be unlawful to take, fish for or possess salmon for commercial purposes taken in any of the salmon preserves described in this section unless otherwise provided in WAC 220-47-040 and WAC 220-47-060.

" . . .

"(8) 'Nisqually River Salmon Preserve' shall include those waters of Puget Sound and the Nisqually River lying inside, southerly and westerly of the following lines: A line projected 225 degrees true from a monument located at the east entrance of Wollochet Bay to Fox Island; and a line projected from Point Gibson on Fox Island true east to the mainland."

tion of the first amendment to the United States Constitution; it merely raises the question whether this is the type of activity protected by the "free speech" clause in that amendment. On this point, the expressions of the United States Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968) are most enlightening:

> We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea. . . . This Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.

The statute violated herein regulated salmon fishing by prohibiting the use of set nets. Obviously this statute is directed only at the "nonspeech" element of Adams' conduct—use of the set net. That it also affected the "speech" element in his conduct was merely incidental. It is unquestionably true that the conservation of salmon as a natural resource is an important governmental interest of this state. The statute in question is a necessary conservation measure; and as such, its incidental limitation on the First Amendment rights of the defendant is justifiable. We therefore hold that his arrest and conviction for violation of this statute were constitutionally valid.

We add as a postscript that this court invited the parties to submit supplemental briefs on the applicability of RCW 10.01.060, which provides:

> No person informed against or indicted for a crime shall be convicted thereof, unless by admitting the truth of the charge in his plea, by confession in open court, or by the verdict of a jury, accepted and recorded by the court: *Provided however,* That except in capital cases, *where the person* informed against or indicted for a crime *is represented by counsel,* such person may, with the assent of the court, waive trial by jury and submit to trial by the court.

(Italics ours.)

We solicited argument on this point because of our concern that an arguable constitutional question was presented by the facts in this case. The threshold question presented is whether or not an unrepresented defendant in a noncapital criminal case may validly waive a right to jury trial under the laws and constitution of the state of Washington.

■ The record reveals that 8 days before trial, the defendant appeared in court, without counsel, and declared that he wished "to waive his right to trial by jury." Upon questioning by the court, he declared that he waived such right voluntarily, without threats or promise by anyone. Superficially, at least, such purported waiver would appear to be violative of the provisions of RCW 10.01.060. It is clear, however, that under our state constitution, in a noncapital criminal case, a defendant has the right to have or waive a jury trial and also the right to defend himself in person. Article 1, sections 21 and 22 (amendment 10) of the Constitution of the State of Washington. Therefore, it would appear that any legislatively imposed *mandatory* limitation on these rights would constitute, per se, a violation of a constitutionally guaranteed right—and therefore be void. We are satisfied, however, the statutory requirement that a defendant be represented by counsel at the time he waives a jury trial is not a *mandatory* requirement which, itself, may not be waived.

In enacting such a statute, the legislature was merely expressing a legislative concern, and establishing one measure to insure, that waiver of a jury trial in a noncapital criminal case be intelligently exercised. After careful review of the record, we conclude that the defendant did knowingly, voluntarily, intentionally—and intelligently—waive his constitutional right to jury trial.

Affirmed as to count 1, reversed as to count 2.

Armstrong, C. J., and Pearson, J., concur.

Petition for rehearing denied January 21, 1971.

Review denied by Supreme Court March 2, 1971.