[No. 2175-1.    Division One.    September 23, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY E. GOSSETT, *Appellant.*

*Michael E. Withey,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Elsa Durham, Deputy,* for respondent.

CALLOW, J.—The defendant was convicted of criminal trespass under RCW 9.83.080 and appeals.

The charge read in pertinent part:

by this Information do accuse Larry E. Gossett of the crime of criminal trespass, committed as follows:

He, the said Larry E. Gossett, . . . on or about the 22nd day of June, 1972, willfully and unlawfully, with knowledge that he was not licensed or privileged to do so, did enter and remain in a building or occupied structure, to-wit: the Century Construction Company, Central Seattle Community College construction project; and did willfully and unlawfully, with knowledge that he was not licensed or privileged to do so, enter and remain in a public or private place or on public or private premises, to-wit: the Century Construction Company, Central Seattle Community College construction project; as to which notice against trespass thereon was given to the said Larry E. Gossett by posting in the manner prescribed by law and reasonably likely to come to the attention of intruders, and by fencing or other enclosure manifestly designed to exclude intruders.

The defendant was arrested shortly after 5:45 a.m. in the area where the private company was constructing a reinforced concrete building. The building was to be a new addition to Seattle Community College. Other parts of the college were being renovated. The division between the "old building" and the new construction site was sealed off by plywood panels and heavy roll-up doors. These doors weighed approximately 250 pounds and were kept chained and padlocked. They were closed and locked on June 22, 1972. The doors also had "no trespassing" signs on them. No one including students was allowed on the new site except the construction workers. In addition, there was an 8-foot fence surrounding the entire project. This fence was also posted with "no trespassing" signs. The gates to this fence had been secured the evening of June 21, 1972.

Early in the morning on the day in question, roughly 50 demonstrators, including the defendant, went to the construction site to protest against racial discrimination in the construction trades. The community college and the construction site were both closed when they arrived and when the demonstration occurred. The defendant testified that he climbed over a fence to gain entrance to the construction site, that he did not observe the "no trespassing" signs on the fence, and that in going from the old part of the building to the new part, he did not encounter any barriers or "no trespassing" signs. Permission had not been given to the defendant to be on the new construction site at that time. To gain entrance to the new construction area, a person would have to pass the "no trespassing" signs and the only way of entering that area was through a section of plywood paneling which had been pulled off on an angle.

The defendant claims that the trial court erred in failing to dismiss the information on the ground that his conduct was an exercise of his right to peaceably assemble and petition for a redress of grievances under the first amendment to the United States Constitution and article 1, section 4 of the Washington State Constitution.

The constitutional right to assemble and protest grievances allows uninhibited and open debate on public issues, but the exercise of the right is subject to reasonable restraints and limitations as are other rights protected by the federal and state constitutions. *Brandenburg v. Ohio,* 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969); *Watts v. United States,* 394 U.S. 705, 22 L. Ed. 2d 664, 89 S. Ct. 1399 (1969); *Cantwell v. Connecticut,* 310 U.S. 296, 84 L. Ed. 1213, 60 S. Ct. 900, 128 A.L.R. 1352 (1940); *Shively v. Garage Employees Local 44,* 6 Wn.2d 560, 108 P.2d 354 (1940); *Tacoma v. Roe,* 190 Wash. 444, 68 P.2d 1028 (1937); *State v. Gohl,* 46 Wash. 408, 90 P. 259 (1907); *Seattle v. Appleget,* 5 Wn. App. 202, 486 P.2d 1155 (1971); *State v. Adams,* 3 Wn. App. 849, 479 P.2d 148 (1970). The exercise of First Amendment rights may be restricted when an unbridled exercise of the right will invade and injure the

rights of others. *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969). As stated in *Cox v. New Hampshire*, 312 U.S. 569, 574, 85 L. Ed. 1049, 61 S. Ct. 762, 133 A.L.R. 1396 (1941):

> The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions.

And in *Cox v. Louisiana*, 379 U.S. 536, 555, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1965), we find:

> A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations.

■ The defendant cites *Amalgamated Food Employees Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 20 L. Ed. 2d 603, 88 S. Ct. 1601 (1968) and *Marsh v. Alabama*, 326 U.S. 501, 90 L. Ed. 265, 66 S. Ct. 276 (1946) to support the proposition that some property which is technically "private" must be open to demonstrations if the demonstrators show a special connection with the private proprietor which necessitates use of the property for the effective communication of a message. The defense argues that the demonstrations were directly related to the activities of the construction trades in discriminating against minorities in hiring; and, therefore, it is contended the construction site

must be open for the demonstration. In *Amalgamated Food Employees Local 590 v. Logan Valley Plaza, Inc., supra; Marsh v. Alabama, supra;* and *Sutherland v. Southcenter Shopping Center, Inc.,* 3 Wn. App. 833, 478 P.2d 792 (1970), the involved area was the functional equivalent of public property in being available for certain public purposes. Whether a privately owned or used area is the functional equivalent of public property is a factual determination that does not lend itself to an all encompassing definition. *Sutherland v. Southcenter Shopping Center, Inc., supra.* In this case, the evidence presented to the jury would support a finding that the construction site was not the functional equivalent of public property open to the public in general. The contention of the defendant was addressed in *Cox v. Louisiana, supra* at 554 as follows:

> The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy.

■ Freedom to assemble upon public property at a time and place when and where it is used in common by all the public may be regulated but not cut off when the assembly does not interfere with the conduct of others of their own pursuits. *Gregory v. Chicago,* 394 U.S. 111, 22 L. Ed. 2d 134, 89 S. Ct. 946 (1969); *Amalgamated Food Employees Local 590 v. Logan Valley Plaza, Inc., supra; Dombrowski v. Pfister,* 380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965). When the assembly takes place on public property which is not open to the use of the public in common, then, as in *Cox v. New Hampshire,* the use may be restrained. To ignore such a valid restraint is unjustified. No one would question that the government could forbid and restrain citizens from demolishing public buildings even though such action was claimed to be a method of petitioning for a

redress of grievances. On the other hand, it is equally apparent that citizens are free to carry a placard or speak out in public against the conduct of foreign or domestic affairs by the government. *Bachellar v. Maryland,* 397 U.S. 564, 25 L. Ed. 2d 570, 90 S. Ct. 1312 (1970); *Davis v. Massachusetts,* 167 U.S. 43, 42 L. Ed. 71, 17 S. Ct. 731 (1897). Difficulty arises when the expression of the right to assemble and speak freely is sought to be exercised in a manner which trammels upon the rights or threatens or injures the property of others, be it private or public. At that point, the government may curtail the time, place and manner of assembly or speech in order that liberty not become license and the welfare of others be diminished by those who would resort to excess. *In re Bacon,* 240 Cal. App. 2d 34, 49 Cal. Rptr. 322 (1966). *Adderley v. Florida,* 385 U.S. 39, 47, 48, 17 L. Ed. 2d 149, 87 S. Ct. 242 (1966) stated:

> The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over . . . objections, because this "area chosen for the peaceful civil rights demonstration was not only 'reasonable' but also particularly appropriate. . . ." Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law . . . [has been] vigorously and forthrightly rejected . . . The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose.

(Citation omitted.) *See also* Annot., 32 A.L.R.3d 551 (1970). Public property is not subject to the indiscriminate use of any citizen but may be protected and secured from general access unless permission to enter is granted. As said in *Poulos v. New Hampshire,* 345 U.S. 395, 405, 97 L. Ed. 1105, 73 S. Ct. 760, 30 A.L.R.2d 987 (1953):

> The principles of the First Amendment are not to be treated as a promise that everyone with opinions or be-

liefs to express may gather around him at any public place and at any time a group for discussion or instruction. It is a *non sequitur* to say that First Amendment rights may not be regulated because they hold a preferred position in the hierarchy of the constitutional guarantees of the incidents of freedom. This Court has never so held and indeed has definitely indicated the contrary. It has indicated approval of reasonable nondiscriminatory regulation by governmental authority that preserves peace, order and tranquility without deprivation of the First Amendment guarantees of free speech, press and the exercise of religion.

(Footnote omitted.)

The State has the right to keep citizens out of areas in public ownership not fitted by their nature for the dissemination of ideas to the general public but which are susceptible to property damage, present dangers to life and limb, or are restricted to limited rather than general public access because of the nature of the area. *Adderley v. Florida, supra.*

The balancing of the interests and rights of the general public in preserving order and in protecting its prerogatives as an owner of property must allow the imposition of the reasonable restraints here placed upon individuals to assemble and speak.

> The balancing of conflicting interests is basic to the achievement of justice as the goal of law.

*Sutherland v. Southcenter Shopping Center, Inc., supra* at 845. The trial court properly declined to dismiss the information.

However, a challenge raised by the defendant requires that a new trial be granted. After the jury had retired to deliberate upon their verdict, the judge who had tried the case from the commencement of the trial and who had instructed the jury left the courthouse. During their deliberation, the jury requested further instructions on the definition of the words "privilege" and "license." Another judge was summoned; and over the objections of the defense counsel, the substitute judge further instructed the

jury on the subject matter of the question they had asked. This occurred late on a Friday afternoon, and no court reporter was present. The record given us is from notes setting forth the objections that were made at the time of the giving of the additional instruction. The objections then made challenge the propriety of a substitute judge, who had not been present during the trial, giving an additional instruction, the giving of the further instruction without a court reporter being present, and challenge the content of the instruction itself.

The rule in this state was set down in *State v. Johnson,* 55 Wn.2d 594, 596, 349 P.2d 227 (1960):

> The general rule, . . . is that a judge may not be substituted to preside over the remainder of a trial after evidence has been adduced before the original judge. The leading case is *Commonwealth v. Thompson,* 328 Pa. 27, 195 Atl. 115, 114 A. L. R. 432.
>
> As a rule, a judge cannot finish the performance of a duty already entered upon by his predecessor where that duty involves the exercise of judgment and the application of legal knowledge to, and judicial deliberation of, facts known only to the predecessor. *Durden v. People,* 192 Ill. 493, 61 N. E. 317; *Commonwealth v. Thompson, supra,* 30 Am. Jur. 25, § 39.

The *Johnson* case reflects the law of Washington, and no appellate decision in this state has addressed itself to the issue since that case was decided.

A different judge than the one who hears the presentation of the evidence may preside over the empaneling and voir dire of the jury, and a substitute judge for the judge who had conducted the trial may accept the verdict of the jury and preside over the polling of the jury after the verdict has been returned. *King v. People,* 87 Colo. 11, 285 P. 157 (1930); *State v. McClain,* 194 La. 605, 194 So. 563 (1940); *Commonwealth v. Thompson,* 328 Pa. 27, 195 A. 115, 114 A.L.R. 432 (1937); *Bellah v. State,* 415 S.W.2d 418 (Tex. Crim. App. 1967). However, between the time of the giving of the oath to the jurors selected to try the case and the return of the verdict, the same judge must instruct the

jury as has handled the presentation of evidence and heard the motions and arguments of counsel unless the defense consents to a substitution. The judge who has heard the evidence and observed the witnesses (and is therefore steeped in the atmosphere and issues of the case) must bring his knowledge to bear upon the instructions given the jury and conclude the judgmental processes of the trial. *State v. Jones,* 6 Ariz. App. 26, 429 P.2d 518 (1967); *Commonwealth v. Zeger,* 200 Pa. Super. 92, 186 A.2d 922 (1962); *State v. Johnson, supra;* Annot., 83 A.L.R.2d 1032 (1962); 24 C.J.S. *Criminal Law* § 1434 (1961). As stated in 53 Am. Jur. *Trial* § 20 (1945) on page 38:

> The substitution of judges during a case is, however, a matter to be guarded carefully, and should be permitted only under extraordinary circumstances when no prejudice can result to the party; substitution should be a matter of necessity when the due administration of justice makes it imperative. As a general rule, a judge cannot finish the performance of a duty entered upon by his predesessor [*sic*] where the duty involves the exercise of judgment and the application of legal knowledge and judicial deliberation of facts known only to his predecessor. . . .
>
> Generally, a judge cannot be substituted during the course of a criminal trial after a jury has been sworn and prior to a verdict. In some jurisdictions a substitution after the jury has been sworn is permitted if the defendant consents or does not object. But in any case, the substitution of judges during a criminal prosecution should be permitted only under most extraordinary circumstances, where the due administration of justice makes it imperative, and then only when no prejudice can result.

(Footnotes omitted.) The substitution of another judge to further instruct the jury after they had retired to deliberate constituted error .entitling the defendant to a new trial.

The remaining issues raised may not recur upon retrial. The conviction is reversed, and the cause remanded for further proceedings consistent with this opinion.

HOROWITZ and WILLIAMS, JJ., concur.