IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34989-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL SCOTT PERRY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Michael Perry appeals his convictions for possession of a stolen motor vehicle, possession of stolen property, possession of methamphetamine, possession of drug paraphernalia, and identity theft. We affirm.

FACTS

Mr. Perry challenges the trial court's dispositions of his CrR 3.5 and CrR 3.6 motions as well as the sufficiency of the evidence adduced at trial. To address Mr. Perry's contentions, we first summarize the facts relevant to the pretrial motions and then discuss the additional facts presented at trial. With respect to the trial facts, our recitation construes the facts in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

No. 34989-6-III
*State v. Perry*

*CrR 3.5 hearing*

On January 30, 2016, two Chewelah police officers on separate patrols were advised of a possible impaired driver. One of the officers, David Watts, spotted the vehicle, a Ford Bronco, pulling a trailer. The Bronco was not being driven erratically, but Officer Watts noticed the trailer lacked a license plate and the temporary brake lights were not functional. Officer Watts initiated a traffic stop. He made contact with the driver, Jonathan Harper, asked for standard documentation,[1] and stated the reason for the stop. Mr. Harper did not provide registration for the trailer, and when asked said he did not have it because the trailer belonged to his passenger. Officer Watts then asked the passenger, later identified as Mr. Perry, if the trailer was his. Mr. Perry responded the trailer was not his but all of the property on it was. He further stated the trailer belonged to an acquaintance in the Addy area, but he never disclosed this individual's name. Officer Watts then checked Mr. Harper's documents with police dispatch and learned his license was suspended. Mr. Harper was arrested and placed in a patrol car.

The second police officer, Matthew Miller, arrived at the scene while Officer Watts was asking Mr. Harper for documentation. After the officers learned Mr. Harper's license was suspended, Officer Miller went to Mr. Perry, still in the Bronco, and asked if

---

[1] License, registration, and proof of insurance.

he had a valid driver's license. Mr. Perry responded he did not believe so and declined

Officer Miller's offer to check. In the patrol car, Mr. Harper stated the trailer belonged to

Mr. Perry and he was helping move Mr. Perry to a new home in the area. At this point, a

Washington State Patrol trooper arrived on the scene and located a vehicle identification

number (VIN) on the trailer. The trooper ran the VIN through dispatch and discovered

the trailer was reported stolen. Officer Miller and the trooper removed Mr. Perry from

the vehicle and placed him under arrest for the stolen trailer. Officer Watts then searched

Mr. Perry and before doing so asked him if he had any weapons or anything illegal on

him. Officer Watts testified that Mr. Perry replied, "Just my meth . . . in my pocket."

Report of Proceedings (May 4, 2016) at 39. Officer Watts then went to a different part of

the scene while Officer Miller administered *Miranda*[2] warnings and placed Mr. Perry in a

patrol car. Mr. Perry declined to speak further.

A short time later, Officer Watts approached Mr. Perry in the patrol car and

proceeded to ask a series of questions about where Mr. Perry was heading, the trailer, and

some of the items on the trailer. Mr. Perry answered these questions. At the jail, Officer

Miller asked Mr. Perry if he would make a written statement, but Mr. Perry requested a

lawyer and questioning ceased. Based on these facts, the trial court admitted all of Mr.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Perry's statements prior to the first *Miranda* warnings given by Officer Miller, but suppressed all other statements. The defense conceded the "just my meth" comment was admissible.

*CrR 3.6 motion*

The trial court did not conduct a formal CrR 3.6 motion hearing. Instead, by agreement of the parties, the trial court reviewed the findings and conclusions from the CrR 3.5 hearing, two search warrant affidavits[3] from Officer Watts, and two search warrants before making its decision. Among other things, the two search warrant affidavits included summaries of the on-the-scene statements made by Mr. Harper.

The two search warrants were executed on the Bronco and the trailer the day after Mr. Perry's arrest. During the search of the Bronco, Officer Watts discovered a driver's license and credit cards that did not belong to either Mr. Harper or Mr. Perry. Suspicious this could be evidence of identity theft, Officer Watts stopped the search, amended his warrant affidavit, and obtained an amended warrant[4] that permitted the officers to search for evidence of identity theft. Relevant to this appeal, the police discovered: (1) a

---

[3] Officer Watts amended his affidavit after his initial search led him to believe there was evidence of more crimes than those contained in the original warrant. He received a new search warrant based on the amended affidavit.

[4] The original warrant was limited to searching for evidence of controlled substance crimes and stolen property.

snowmobile that had been reported stolen; (2) an ABC Mini Storage rental agreement

with Mr. Perry's name on it; (3) a credit card statement not in Mr. Perry's name; (4) tax

documents, organized in a folder, and not in Mr. Perry's name; (5) two Idaho license

plates that had been reported stolen, and (6) a red case containing several needles, plastic

baggies, and spoons with residue.

The trial court ruled that all items seized during Mr. Perry's arrest and all items

located during the two searches were admissible.

*Trial*

At trial, Mr. Perry faced charges of possession of a stolen motor vehicle—

the snowmobile (count 1), second degree possession of stolen property—the trailer

(count 2), possession of methamphetamine (count 3), possession of drug paraphernalia—

items found in the red case (count 4), third degree possession of stolen property—the

Idaho license plates (count 5), and second degree identity theft as to the individuals

associated with the credit card statement and the tax documents (counts 6 and 7).[5]

Officer Watts testified at trial to the facts above, excluding the suppressed

statements, with regard to the traffic stop with Mr. Perry and Mr. Harper on January 30,

2016.  He also explained that he discovered a "baggie" of methamphetamine in Mr.

---

[5] The trial court dismissed two additional counts at the close of the State's
evidence.

Perry's pocket at the time of Mr. Perry's arrest.

Multiple witnesses testified about the items discovered during the arrest of Mr. Perry and the subsequent search of the Bronco and trailer. This testimony was relevant to the various counts of possession of stolen property, identity theft, and the charge of possession of paraphernalia. Broken down by count, the testimony revealed as follows:

- Count 1—possession of the stolen snowmobile: The snowmobile's owner verified law enforcement testimony that the snowmobile had been stolen. He also stated he remembered seeing a Chevy truck associated with Mr. Perry on the morning that the snowmobile went missing. In addition to this testimony, law enforcement testified that a receipt bearing the snowmobile owner's name was found in a box located inside of Mr. Perry's storage locker. Also inside the box was an owner's manual associated with the stolen snowmobile. Surveillance of the storage locker facility showed Mr. Perry driving a large Chevy truck. The truck was hauling what appeared to be the snowmobile along with two cardboard boxes, similar to the ones containing the snowmobile owner's receipt and the snowmobile manual. Mr. Harper testified as a cooperating witness and described Mr. Perry's use of the snowmobile and association with the Chevy truck.

- Count 2—possession of the stolen trailer: An employee of a Spokane car dealership testified the trailer being hauled by the Bronco was stolen in January

2015, and neither Mr. Perry nor Mr. Harper had permission to use it. The trailer was valued at $1,500. Mr. Harper testified to Mr. Perry's association with the trailer.

- Count 4—possession of drug paraphernalia: Officer Watts testified to locating a red zippered case on the trailer, inside of one of the tote bins. Inside the case, Officer Watts discovered drug paraphernalia items including needles, spoons (one of which bore some residue), and plastic bags.

- Count 5—possession of stolen Idaho license plates: Officer Watts testified that the two Idaho plates located inside some tote bins on the trailer had both been reported stolen.

- Counts 6 and 7—identity theft: The individual named on the credit card statement testified the statement belonged to her and no other person had permission to possess it. The individual named on the tax documents testified similarly. Neither individual was familiar with Mr. Perry or Mr. Harper.

The jury found Mr. Perry guilty of counts 1-7. Mr. Perry appeals.

## ANALYSIS

*CrR 3.5 hearing—admission of Mr. Perry's pre-*Miranda *statements*

Mr. Perry argues the trial court erred when it admitted his pre-arrest statements to

Officers Watts and Miller. Our review is de novo. *State v. Rankin*, 151 Wn.2d 689, 694,

92 P.3d 202 (2004).

The Washington Constitution affords vehicle passengers greater privacy

protections than its federal counterpart. *State v. Mendez*, 137 Wn.2d 208, 219, 970 P.2d

722 (1999). A vehicle passenger has a right to be free from police intrusion and must not

be subjected to police questioning unless justified by the attendant circumstances.

*Rankin*, 151 Wn.2d at 695. To comply with our constitutional standards, an officer may

only request information from vehicle occupants if either: (1) the questions are within the

scope of the original traffic stop, or (2) the officer acquires a lawful reasonable suspicion

to investigate further. *See State v. Allen*, 138 Wn. App. 463, 470-71, 157 P.3d 893

(2007); *Rankin*, 151 Wn.2d at 695.

The questions posed to Mr. Perry prior to his arrest fell well within constitutional

bounds. Officer Watts properly asked Mr. Perry about the ownership of the trailer

because the trailer lacked a license plate as required by state law[6] and Mr. Harper had

identified Mr. Perry as the trailer's owner. Because the owner of a vehicle can be held

responsible for a traffic infraction, RCW 46.16A.500, Officer Watts had valid reasons to

---

[6] A trailer is considered a vehicle under the motor vehicles statute, chapter 46 RCW. RCW 46.04.670, .620, .010. Under Washington law, all vehicles must display license plates assigned by the Department of Licensing. RCW 46.16A.030.

question Mr. Perry about the trailer. The question posed to Mr. Perry about the status of

his driver's license was also proper. In asking the question, Officer Miller was not

engaged in a fishing expedition. To the contrary, Officer Miller was attempting to restrict

law enforcement's involvement in Mr. Harper's and Mr. Perry's affairs. Because Mr.

Harper had been arrested for driving on a suspended license, Officer Miller properly

asked Mr. Perry about his driver's license status as part of his duty to explore reasonable

alternatives to impounding Mr. Harper's vehicle. *See, e.g.*, *State v. Froehlich*, 197 Wn.

App. 831, 838, 391 P.3d 559 (2017). This interaction did not rise to the level of a

seizure.[7]

*CrR 3.6 motion—validity of search warrant*

Mr. Perry challenges the validity of the search warrant because the warrant

affidavit failed to establish Mr. Harper's credibility or reliability as an informant. This

challenge fails because, at the time the warrant was issued, Mr. Harper was not an

informant. He was merely a percipient witness. Accordingly, there was no requirement

that the affidavit address Mr. Harper's credibility.

On its face, the warrant affidavit provided probable cause to believe the

snowmobile was stolen and that there were illegal narcotics in the Bronco. Once the

---

[7] Because Mr. Perry was not seized, let alone subjected to a de facto arrest, *Miranda* warnings were not required.

police entered the Bronco, further evidence provided probable cause for the second warrant. Given the validity of the warrants, the trial court correctly denied Mr. Perry's motion to suppress.

*Sufficiency of the evidence*

Mr. Perry argues the evidence is insufficient to support his convictions for possession of stolen property, possession of a stolen vehicle, identity theft, and possession of drug paraphernalia.

As to the stolen property and stolen vehicle convictions (counts 1, 2 and 5), Mr. Perry asserts the State included extra elements in the to-convict instructions that the State failed to prove beyond a reasonable doubt. *See State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998); *see also State v. Johnson*, 188 Wn.2d 742, 399 P.3d 507 (2017). Specifically, the to-convict instructions for each offense required the State to prove Mr. Perry "withheld or appropriated" property "to the use of someone other than the true owner or person entitled thereto." Clerk's Papers at 114-15, 118.

The "withheld or appropriated" language referenced by Mr. Perry comes from the statutory definition of the term "possessing stolen property." RCW 9A.56.140. Accordingly, nothing extra was added to the State's proof requirements. The State remained required to prove (1) Mr. Perry possessed the property at issue, (2) the property had been stolen, in that it had been withheld or misappropriated from its rightful owner or

possessor, and (3) Mr. Perry knew the property was stolen.

Here, the State presented sufficient evidence of all required elements for each of

the stolen property convictions (counts 1, 2 and 5). Mr. Perry's statement that he was

using the trailer and that all the trailer's contents belonged to him was, in and of itself,

sufficient proof of possession. In addition, there was testimony that all of the property at

issue had either been stolen or misappropriated and that, as a result, Mr. Perry would have

no right of possession. Finally, circumstantial evidence supported finding Mr. Perry

knew the property was stolen. For example, Mr. Perry's suspicious statement that the

trailer belonged to an unnamed acquaintance suggested Mr. Perry was hiding something.

In addition, the testimony from the snowmobile owner that he saw Mr. Perry's truck the

day that the snowmobile went missing suggested Mr. Perry was actively involved in theft.

These suspicious circumstances, coupled with the nature and quantity of the stolen items

found on the trailer, provided sufficient evidence for the jury to infer knowledge. *State v.

Ford*, 33 Wn. App. 788, 790, 658 P.2d 36 (1983).

Mr. Perry also challenges the sufficiency of evidence as to his identity theft

convictions (counts 6 and 7). As to these convictions, Mr. Perry argues there is

insufficient evidence he had any intent to use the tax documents or credit card statement

to commit a crime. *See* RCW 9.35.020(1). This argument is unpersuasive. The owners

of the credit card statement and the tax documents testified Mr. Perry did not have

11

permission to possess those items, and they had never met him before. The items were organized within a folder in a tote bin on the trailer, which suggested a plan for future use. And the documents were found along with other items of stolen property, thus indicating an overarching criminal operation. These facts provided sufficient circumstantial evidence to support the identity theft convictions. *See State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (possession coupled with slightly corroborating evidence can constitute sufficient circumstantial evidence of intent).

Mr. Perry last argues the State failed to prove he possessed or used the red case containing drug paraphernalia (Count 4). Officer Watts testified the items found in the case are used for preparing or consuming drugs such as methamphetamine. The relevant statute forbids both actions. *See* RCW 69.50.412(1). Also, Mr. Perry had methamphetamine in his pocket on the scene. Viewed in a light most favorable to the State, a rational trier of fact could find from this evidence that Mr. Perry used the contents of the case to prepare and consume methamphetamine. Sufficient evidence supports the challenged convictions.

*Ineffective assistance of counsel*

Mr. Perry claims his counsel was ineffective for failing to seek suppression of his pre-*Miranda* statement admitting possession of methamphetamine. It may well be that Officer Watts's question, which pertained not only to weapons but also illegal items, fell

12

outside the public safety exception to *Miranda*. *See State v. Spotted Elk*, 109 Wn. App. 253, 260, 34 P.3d 906 (2001). Nevertheless, defense counsel was not ineffective for failing to seek suppression. Instead, defense counsel's actions were reasonably strategic. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

It bears emphasis that Mr. Perry's statement regarding the methamphetamine was not particularly helpful to the State. Because the methamphetamine was found in Mr. Perry's front pocket, his statement admitting possession merely reiterated the obvious. Nevertheless, Mr. Perry's statement provided defense counsel with fodder for painting Mr. Perry as honest. This contrasted to Mr. Harper, who admitted that he had lied to police during the traffic stop. Because defense counsel's trial strategy was to place blame for the stolen property on Mr. Harper, the decision not to seek suppression of Mr. Perry's pre-*Miranda* statement was a legitimate trial strategy. It was therefore not ineffective and does not provide a basis for reversing Mr. Perry's conviction.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his statement of additional grounds for review, Mr. Perry argues that the rule laid out in *State v. Johnson*, 55 Wn.2d 594, 596-97, 349 P.2d 227 (1960) was violated here because one judge presided over his CrR 3.5 hearing, but a different judge presided over the CrR 3.6 motion and the remainder of trial. It is true there were two different judges in this case. However, the *Johnson* rule only applies during the course of a

13

No. 34989-6-III
*State v. Perry*

criminal trial after a jury has been sworn and prior to a verdict. *See State v. Gossett*, 11 Wn. App. 864, 871-72, 527 P.2d 91 (1974). The jury had not been selected at the time of the CrR 3.5 and CrR 3.6 motions, so the *Johnson* rule does not apply. Further, Mr. Perry does not explain how this change of judges prejudiced him, so he has waived this claim because he did not object in the trial court. *Johnson*, 55 Wn.2d at 597.

## CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

14