## JOURNIGAN *v.* STATE
## GARDNER *v.* STATE

(Two Appeals in One Record)

[No. 42, September Term, 1960.]

*Decided November 9, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Leo Wm. Dunn, Jr.,* with whom was *Joseph A. DePaul* on the brief, for the appellants.

*Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, William L. Kahler, State's Attorney for Prince George's County,* and *Frank P. Flury, Deputy State's Attorney,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellants, appealing after a conviction of robbery with a deadly weapon, first contend that the substitution of a judge during the course of the trial denied them a fundamental right to the presence of the same judge throughout the trial which they could not waive, as they had expressly purported to do, and then say that the privilege against self-incrimination was violated when a policeman was allowed to testify that an appellant would not try on a hat found at the scene of the crime.

Appellants went to trial on February 9, 1960, in the Circuit Court for Prince George's County before Judge Fletcher and a jury. The testimony of three of the State's nine witnesses took all of that day, and the trial was set to resume on February 11. Judge Fletcher became ill and the case was continued until

February 12. When it became known that Judge Fletcher could not again preside at the trial, counsel for the appellants talked to their clients and secured their agreement, willingly given, to have the trial continue with Judge Digges on the bench. When trial was resumed on February 12, it was stipulated in open court that the case was to proceed with the jury then empaneled, with Judge Digges substituting for Judge Fletcher as presiding judge, that neither side desired to make a motion for a mistrial and affirmatively requested that no mistrial be declared, that the court stenographer should read to Judge Digges, in the presence of appellants but without the presence of the jury, the testimony already taken, and that thereafter the case should proceed in the customary manner, with the remaining witnesses for the State and those for the defense giving their testimony from the stand. Judge Digges asked each of the appellants if he agreed to the stipulation entered into by his counsel and each replied that he did.

There is no claim of, and nothing to show actual prejudice to the appellants because of the switch in judges. Unless the presence of the same judge throughout the proceedings is essential to a fair trial in a fundamental or constitutional sense and, so, is a right which an accused cannot waive, it is apparent that the appellants have no basis for complaint on appeal after their voluntary and knowing consent to the substitution of judges and to the subsequent procedures of the trial.

Early in the common law it was the rule that an accused was not permitted to waive any right intended for his protection. In those days an accused could not testify in his own behalf and in felony cases he was not allowed counsel, the judge giving him such protection in this respect as he got; conviction of crime operated to outlaw and attaint the blood and to work a forfeiture of official titles of inheritance and thus affected the rights of third parties. As the conditions which justified the rule against waiver ceased to exist, waiver was allowed in more and more situations. Lately the law has taken as great pains to surround the accused with the means to effectively make his defense as the ancient law took to prevent that consummation. Now it is held generally that one

accused of crime may waive almost every, if not every, constitutional right or privilege—among others a lawyer, a jury, confrontation of witnesses, and a speedy trial.

This Court has not yet gone full course. It has not permitted a waiver of the right of the accused to be personally present at all stages of the trial (a common-law right preserved by Art. 5 of the Declaration of Rights) even though counsel has agreed to the absence of the client, reiterating in *Midgett v. State*, 216 Md. 26, 37, that the right "is personal to the accused and cannot be waived by his counsel."

Other courts have not felt this right to be so fundamental it cannot be waived. The Supreme Court in *Frank v. Mangum*, 237 U. S. 309, 338, 59 L. Ed. 969, 984, held that the presence of the prisoner when the verdict was rendered was not so essential that a rule of practice permitting the accused to waive it and to be bound by his waiver, offended due process in a capital case. See also *Howard v. Kentucky*, 200 U. S. 164, 50 L. Ed. 421. The Court held in *Diaz v. United States*, 223 U. S. 442, 56 L. Ed. 500, that in a non-capital case in a federal court when the accused is on bail, he may, after the trial has begun in his presence, voluntarily absent himself and thus waive his right to be present, leaving the Court free to proceed with the trial in like manner as if he were present.[1]

As late as 1915 the Court of Appeals for the Second Circuit held in *Freeman v. United States*, 227 F. 732, 759, that it was essential to the constitutional trial of a defendant charged with a felony that there be the continuous presence of a jury of twelve men and a judge, and that another judge could not lawfully be substituted during the progress of the trial for the one before whom it was commenced. The Court held that the defendant was entitled to trial by jury and that this meant a jury of twelve men presided over by a judge. It held that an accused could not waive a trial by jury in a felony case, and went on from there to decide that the jury and the judge must remain

---

1. Rule 43 of the Federal Rules of Criminal Procedure provides that "In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict."

identical from the beginning to the end of the trial and that "It is not possible for either the government or the accused, or for both, to consent to a substitution either of one judge for another judge, or of one juror for another juror. The continuous presence of the same judge and jury is equally essential throughout the whole of the trial." [2]

Fifteen years after *Freeman*, the Supreme Court in *Patton v. United States*, 281 U. S. 276, 293, 298, 74 L. Ed. 854, 860, 863, destroyed the very basis of that decision. In *Patton* a juror became incapacitated during the trial of an offense for which punishment could be imprisonment in the penitentiary, and by express stipulation the trial proceeded with eleven jurors. The Court agreed with *Freeman* that a jury trial means a trial by a jury of twelve and a judge but held that an accused in a serious case could waive the right to such a trial, altogether, or by consenting to trial by a number of jurors less than twelve. The Court found the decisive question to be whether the federal constitutional provisions for a jury trial established a tribunal "as a part of the frame of government, or only to [guarantee] to the accused the right to such a trial." The answer given to the question was this: "* * * we conclude that Article III, Section 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege to an imperative requirement." [3]

---

**2.** The opinion referred to a number of decisions in which, where the original judge had died, been ill or had resigned, it was held proper for another judge to pass on a motion for a new trial or to impose sentence.

**3.** Maryland has long accepted as a matter of course the right of an accused, in the most serious case, to waive a jury trial. See Grammer v. State, 203 Md. 200, 213, quoting Judge Bond in Rose v. State, 177 Md. 577, 580-581, to the effect that trials without juries had been allowed since near the founding of the province, if not from the beginning, and that instances of trials without juries appear in some of the records of the Provincial Court and county courts of the 17th Century. The Supreme Court held in Hallinger v. Davis, 146 U. S. 314, 36 L. Ed. 986, that a state procedure of allowing a waiver of a jury trial in a murder case as to the degree of guilt did not conflict with the 14th Amendment.

Six years before *Patton* the Supreme Court, in *United States v. Valante,* 264 U. S. 563, 564, 68 L. Ed. 850, 851, denied habeas corpus to one convicted in a district court in a trial in which it had been stipulated that the verdict might be received and sentence imposed by a judge other than the one who had presided at the trial. The contention of the prisoner was that the continuous presence of the same judge throughout the trial was a constitutional requisite which he could not waive. The Court said: "Without intimating that there is anything of substance in this contention, it is clear that the error, if any was committed, did not go to the jurisdiction of the court, or render the judgment void * * *."

That the *Freeman* case had been in effect overruled was noted by the Second Circuit in *Cahill v. Mayflower Bus Lines,* 77 F. 2d 838, 840, and by the Ninth Circuit in *Simons v. United States,* 119 F. 2d 539, 543, 544, *cert. denied,* 314 U. S. 616, 86 L. Ed. 496. The latter case held effective a consent that a substituted judge, who had not been present during the taking of the testimony, should rule on the requests for instructions, instruct the jury, rule on a motion for a new trial and sentence those convicted. The stipulation and the individual consents were entered into in open court, as in the case before us. The substitute judge caused the record to show that he had read the printed record and the transcript of the evidence. The Court said of the *Freeman* case: "A reading of the entire opinion in the cited case shows that the Court based its decision on the premise that the right to a jury trial as preserved by the United States Constitution may not be waived by the accused. This premise has been destroyed by the decision of the United States Supreme Court in *Patton v. United States.*" The Court referred to the holding of *Patton* that since the right to a jury trial may be waived, it would be unreasonable not to give effect to the waiver, and said: "On like principles we hold that since the District Court had jurisdiction of the subject matter * * * subject only to the controlling provisions of the Constitution, and since the right to a jury trial, including the right to have the same judge proceed throughout the trial, as preserved by Article III, Section 2 of the Constitution, is a privilege which the accused

may forego at his election, it would be unreasonable to leave the Court powerless to give effect to the waiver. We hold that the Court has authority in the exercise of a sound discretion to accept the waiver, and as a necessary corollary, to proceed to the trial and determination of the case with the substitute judge."

The *Simons* case was followed in *Haskins v. United States* (App. D. C.), 163 F. 2d 766, on somewhat similar facts in a per curiam opinion. In *Grove v. United States* (C. C. A. 4th), 3 F. 2d 965, *cert. denied,* 268 U. S. 691, 69 L. Ed. 1159, a juror in a criminal trial became ill. By stipulation it was agreed that the jury be discharged and a new jury sworn, the new jury to consist of the remaining eleven of the jury first sworn and one additional juror. The testimony was read to the new jury by the stenographer. The Circuit Court held the trial constitutional.

Various state courts have held that an accused can consent expressly—or by not objecting waive the point—to the substitution of one judge for another during the course of the trial. They include *State v. McCray* (Iowa), 179 N. W. 627 (the circumstances were quite analogous to those in the instant case); *People v. Henderson,* 28 Cal. 465; *People v. Casselman* (Cal. App.), 101 P. 693; *Burrage v. State* (Miss.), 58 So. 217; *Bowman v. Alvis* (Ct. App. Ohio), 96 N. E. 2d 605. See also *Reg. v. Jeffreys,* 22 Law Times (N. S.) 786, and compare *Robinson v. Commissioners,* 12 Md. 132.

The cases relied on by appellants are with one exception ones in which the substitution of the judge was made over objection of the man on trial.[4] The exception is the Oklahoma case of *Henderson v. State* (Crim. App. Okla.), 246 P. 2d 393, which we do not find persuasive.

We conclude that there was no fundamental or constitutional bar to the consent by the appellants to the substitution of Judge Digges for Judge Fletcher and that they are bound by their agreement that the trial proceed under Judge Digges.

We turn to the point made by appellant Journigan that his

---

4. Commonwealth v. Thompson (Pa.), 195 A. 115; Durden v. People (Ill.), 61 N. E. 317; Blend v. People, 41 N. Y. 604.

privilege against self-incrimination was violated when a policeman was allowed to testify that he would not try on a hat found at the scene of the crime. *Allen v. State,* 183 Md. 603, 609, is relied on. That case held it error to compel the accused while on the stand to put on a hat in order to show that it fitted him and so to permit the inference it was his. The case, however, went no further than to hold that the privilege embraces "the involuntary furnishing of evidence by the accused by some affirmative act *in open court* which might aid in establishing his guilt." (Emphasis added.) Here the refusal to try on the hat did not occur in court but soon after the arrest. We do not need to pass on the merits of the appellant's argument on this point, however, for the testimony objected to came in later without objection from another witness. In this situation there can be no successful claim on appeal that the original error in admitting the testimony, assuming it to have been error, was prejudicial. Maryland Rule 522 d, 2; *Wolfe v. State, Use of Brown,* 173 Md. 103, 112; *Barber v. State,* 191 Md. 555, 566; *State Roads Commission v. Bare,* 220 Md. 91, 94.

*Judgments affirmed.*