637 A.2d 1208

**Samuel HOOD**

v.

**STATE of Maryland.**

**No. 96, September Term, 1992.**

Court of Appeals of Maryland.

March 10, 1994.

Martha G. Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI, ROBERT M. BELL and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired, Specially Assigned), JJ.

McAULIFFE, Judge.

This case involves a claim of error arising from a mid-trial substitution of the presiding judge over the objection of the defendant.

## I

Samuel Hood was indicted in Baltimore City for first degree murder, use of a handgun in the commission of a felony, carrying a handgun, and related offenses. On 4 January 1991, trial by jury commenced before Judge John N. Prevas. The trial resumed on 7 January 1991 and continued through 8 January, when Judge Prevas fell ill and was replaced during the noon recess by Judge Edward J. Angeletti. Judge Angeletti presided over the balance of the trial. Although the jury found the defendant not guilty of first degree murder, it returned verdicts of guilty on the counts charging second degree murder, use of a handgun in the commission of a felony, and carrying a handgun.

On 12 February, the defendant's motion for a new trial was heard and denied by Judge Prevas. Judge Prevas imposed sentences of 25 years imprisonment for the murder conviction and 20 years concurrent for the use of a handgun. The conviction for carrying a handgun was merged. The defendant appealed and the Court of Special Appeals affirmed in an unreported opinion, holding that the questions of the adequacy of Judge Angeletti's review of the record and of his failure to certify his review of the record were not preserved. 92 Md.App. 745. Alternatively, the intermediate appellate court

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, § 3A, he also participated in the decision and adoption of this opinion.

held that if those questions were preserved, there was no reversible error because a review of the entire record disclosed that Judge Angeletti "was ... sufficiently familiar with the record to permit him to proceed with and finish the trial."

## II.

On the morning of 8 January, the third day of trial, Judge Prevas addressed the jury:

Good morning ladies and gentlemen, I apologize for the delay. I've been having, hopefully a slight medical problem. My doctor will tell me whether it's greater or not. I've been [having] some problems with shortness of breath because of a chest congestion and that caused me to be late today, and then we had some legal rulings, but we're ready to resume.

Later in the morning, before the lunch recess, Judge Prevas said:

All right. Ladies and gentlemen, I'm sorry that I'm playing havoc with [your] schedule but my doctor has got to see me to find out whether what I've got is serious or not.

Judge Prevas did not return after the luncheon recess. Judge Angeletti took the bench and announced that he would be presiding for the duration of the trial because Judge Prevas had been admitted to the hospital. Counsel for the defendant stated his client's objection:

I've had an opportunity to speak to my client and explain the circumstances of Judge Prevas being hospitalized.

This case is about to come to its conclusion and because there were some interesting issues generated—There was the self-defense issue generated, he wishes me to ask for a mistrial.

Judge Angeletti denied the motion for a mistrial.

While not a model of clarity, the defendant's objection is sufficient to preserve this issue for our review. The defendant moved for a mistrial when confronted with the fact that the original trial judge could no longer be present and a substitute

judge proposed to take over. The defendant did not state a specific reason for his objection, but we believe the general objection he interposed was sufficient to demonstrate that he did not consent to the mid-trial substitution of judges. *Cf. von Lusch v. State,* 279 Md. 255, 262–63, 368 A.2d 468 (1977) (deciding that where the trial court does not request a statement of the grounds for an objection and the defendant does not voluntarily delineate specific grounds, a general objection is sufficient to preserve all grounds with respect to evidentiary matters). In the absence of the defendant's consent, compliance with Maryland Rule 4–361(b), dealing with substitution of a judge during a jury trial, was required. We reject the State's argument that the issues here raised were not preserved.

### III.

Maryland Rule 4–361 provides:

**(a) After Verdict or Acceptance of Plea.**—If by reason of termination of office, death, sickness, or other disability, the judge before whom a defendant has been tried or by whom a plea of guilty or nolo contendere has been accepted is unable to perform an act or duty of the court after verdict or after acceptance of a plea, any other judge authorized to act in that court may sentence the defendant and perform any other act or duty if satisfied that he or she can properly do so.

**(b) During Jury Trial in Circuit Court.**—If by reason of termination of office, absence, death, sickness, or other disability, the judge before whom a jury trial in circuit court has commenced is unable to proceed with the trial, any other judge authorized to act in that court upon certifying that he or she has become familiar with the record of the trial, may proceed with and finish the trial.

The decision to substitute a judge at any point in the trial is not one to be made lightly. When the role of a substitute judge often involves more than mere caretaking or performance of ministerial duties, it necessarily involves the judge in

substantive rulings of evidence, the giving of instructions, and other important decisions requiring thorough knowledge of the entire record. As the Supreme Court of Pennsylvania observed:

> The substitution of judges during a case should be carefully guarded and never permitted except under most extraordinary circumstances, and only then when no prejudice can result to the parties. Substitution must be a matter of necessity, where the due administration of justice makes it imperative and without prejudice.

*Commonwealth v. Thompson*, 328 Pa. 27, 195 A. 115, 116 (1937). *See also Randel v. Beto*, 354 F.2d 496, 500–01, 503 (5th Cir.1965) (habeas corpus petition claiming violation of right to jury trial because of substitution of judges so that trial judge could attend a political engagement states a claim requiring a full hearing), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2058, 18 L.Ed.2d 996 (1967).

Rule 4–361(b) specifies that the substitute judge shall certify that "he or she has become familiar with the record of the trial...." Exactly how this must be accomplished, and the precise extent of the knowledge of the record that is required, may depend upon the stage in the trial at which the substitution is made and the additional duties the substitute trial judge may be called upon to perform. The latter factor is to some extent dependent on the former, but may also be affected by the anticipated nature and duration of the substitution. Assuming responsibility for the entire remaining conduct of a trial entered in midcourse presents problems quite different from those presented by a temporary substitution for a limited purpose. *See Gibson v. State*, 334 Md. 44, 51, 637 A.2d 1204 (1994) filed today (where substitution is temporary and function of substitute judge is that of caretaker performing only ministerial duties, Rule 4–361(b) is not implicated).

■ Addressing the requirements of Rule 4–361(b) in the context in which the Rule is ordinarily intended to apply, *i.e.*, when there is a required substitution of the trial judge during a jury trial and anytime before verdict, the ordinary method a

judge should use to "become familiar with the record of the trial" is to read, or to have read to him or her, a written transcript of the previous proceedings, or in the case of an audio or video record, to listen to the prior proceedings.[1] The judge must then file, or dictate into the record, a certification that he or she has become familiar with the record of trial. The judge should include in this certification the means used to gain familiarization, so that a timely objection may be interposed if a party believes the method employed is inadequate, or believes for any other reason that substitution would not comport with due process of law.

With the consent of the parties, a judge proposing to substitute for another judge may gain the requisite familiarity with the record through other means, such as receiving from counsel an agreed statement of preceding testimony and proceedings, or through agreed proffers and limited review of certain portions of the record. The object is, of course, to ensure that the judge has a sufficient grasp of the prior testimony and proceedings to be able to fairly and effectively exercise his or her discretion with respect to rulings thereafter required, and to properly instruct the jury. Any method the parties and the judge can agree upon will suffice, provided the substitute judge is ultimately satisfied of his or her ability to continue with and finish the trial. The certification of the trial judge should specify the method or methods agreed upon and utilized to gain familiarization with the record.

Standard 15–3.3 of the American Bar Association's Standards for Criminal Justice (2d ed. 1986 Supp.) provides as follows:

If, by reason of death, sickness, or other disability, the judge before whom a jury trial has commenced is unable to proceed with the trial, another judge, upon certifying that

---

1. Ordinarily this would not include the record of voir dire and jury selection proceedings. If, however, by motion for a new trial or otherwise a party raises a question requiring knowledge of those proceedings, they would have to be reviewed and an appropriate certification filed or dictated into the record.

he or she has familiarized himself or herself with the record of the trial, may proceed with and finish the trial.

The Commentary to that Standard is instructive:

This standard supports the view taken by the federal Advisory Committee on Criminal Rules that these functions [*i.e.,* charging the jury, ruling on motions, etc.] may be adequately performed by a judge thoroughly familiar with the trial record.

*　　*　　*　　*　　*　　*

While the word "record" is not defined in the standard, it is anticipated that ordinarily the judge will become familiar with the record, either by having the proceedings transcribed and then examining it or (more likely) by having the reporter read it aloud. There will be instances, however, in which it will be possible for a judge to assimilate the record in other ways, as where counsel are in agreement on the evidence already admitted. The matter calls for the exercise of sound discretion by a judge. Whatever method is used should ensure that the judge will be sufficiently familiar with what has occurred before entry into a case to perform judicial duties effectively.

In *Journigan v. State*, 223 Md. 405, 164 A.2d 896 (1960), *cert. denied*, 365 U.S. 853, 81 S.Ct. 818, 5 L.Ed.2d 817 (1961), which was decided before the adoption of the present Rule, this Court upheld the substitution of judges where the parties had stipulated that the court stenographer read to the substituting judge, out of the presence of the jury, the testimony already taken. *Id.* 223 Md. at 407, 164 A.2d 896. Decisions from other jurisdictions upholding substitution of a judge under procedural rules similar to Rule 4–361(b) have emphasized the importance of the substituting judge's familiarity with the preceding testimony in the case. For example, in *State v. Misner*, 410 N.W.2d 216, 219 (Iowa 1987), the Supreme Court of Iowa, after reviewing the record, concluded that the substitution of a trial judge was appropriate after the original presiding judge became ill. The Court found that the replacement judge had certified that he had familiarized him-

self with the record and had reviewed the testimony given by the witnesses that he did not hear testify. Thus, the record revealed full compliance with Iowa's rule.[2]  *Id.  See also State v. McKinley,* 7 Ohio App.3d 255, 7 OBR 335, 455 N.E.2d 503, 505–07 (1982) (no prejudice to defendant where substituting judge recessed trial for several days so she could read the preceding judge's notes; when trial resumed, substituting judge certified she had become familiar with the record of the trial and had heard one witness, who had already testified, substantially repeat that testimony before the jury).

In the case before us, the trial judge did not file or dictate a certificate as required by Rule 4–361(b). When he assumed control of the trial after the luncheon recess on the third day of trial, he said nothing about what he may have done to familiarize himself with the record. In later comments, made in the course of ruling on objections, Judge Angeletti said he had read Judge Prevas's notes and had talked with Judge Prevas about the trial.

The method employed by Judge Angeletti to familiarize himself with the record was not one that had the consent of the parties. It was not one of the ordinary methods used for familiarization, and under the circumstances, we are unable to say that the method employed was adequate. Judge Prevas's notes are not in the record, and consequently we have no indication of their content or legibility. Moreover, we think it would be an extremely rare case when the preceding judge's notes would furnish a satisfactory alternative to the official record of the case. Nor, in the absence of consent of the parties, is speaking with the preceding judge a sufficient alternative to familiarization through the use of the written or

---

**2.**  Iowa R.Crim.P. 18(7)(b)(1) is patterned after Fed.R.Crim.Proc. 25(a), and provides:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he or she has familiarized himself or herself with the record of the trial, may proceed with and finish the trial.

This rule is also substantially similar to Md.Rule 4–361(b).

electronic record. Neither the parties nor a reviewing court can be expected to know to what extent the case was discussed, or with what degree of accuracy. Even if we treat the latter statements of Judge Angeletti as a certification, it is clear that the means of familiarization, which had not been agreed upon by the parties, were not those contemplated by the Rule. Nor, under the circumstances of this case, were the means of familiarization employed by Judge Angeletti adequate.

### IV.

■ We have concluded that the defendant interposed a timely objection to the mid-trial substitution of judges in this case, and that the substitute judge failed to comply with the requirements of Rule 4–361(c). We must now determine whether, under the circumstances of this case, a new trial is required.

Some courts have held that a mid-trial substitution of judges is impermissible in the absence of the defendant's consent or waiver. *See, e.g., Durden v. People,* 192 Ill. 493, 61 N.E. 317 (1901); *Eagan v. State,* 480 N.E.2d 946, 952 (Ind. 1985); *State v. Davis,* 564 S.W.2d 876, 878–79 (Mo.1978); *State v. Gossett,* 527 P.2d 91, 95–96, 11 Wash.App. 864 (1974). Indeed, as the Supreme Court of California recently pointed out in *People v. Espinoza,* 3 Cal.4th 806, 838 P.2d 204, 838 P.2d 204, 216–17 (1992), at an earlier time in the history of this country it was held that the right to jury trial included the common law right to a trial by twelve jurors presided over by the same judge throughout the trial, and that a defendant could not waive those rights. The law has changed in several respects. It is now clear that the Sixth Amendment right to a jury trial may be waived by a defendant. *See Patton v. United States,* 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930).

Maryland Rule 4–361 does not prescribe the consequences for a violation of its requirements. The appropriate consequences must therefore be determined in light of the totality of the circumstances and the purposes of the Rule. *Cf.*

Maryland Rule 1–201(a). Rule 4–361 was intended to be a precise rubric, detailing the procedure to be followed when a true substitution of judges (as opposed to a brief performance of ministerial duties by another judge) occurs.

Judges often enjoy a significant measure of discretion in decisions they make during the course of a trial. Rule 4–361(b) makes clear that a party is entitled to have this discretion exercised by a judge thoroughly familiar with the trial record. The same trial judge might exercise his or her discretion in one of several ways depending on how familiar he or she is with what has gone on before; and although the ruling made is within the limits of the trial judge's discretion and therefore not reversible on appeal, the parties are deprived of the exercise of informed discretion, and quite possibly of a different determination that was also within the judge's range of discretion and that might have been made had the judge been fully informed. Thus, though there has been a deprivation of a right, it may be very difficult for a defendant to demonstrate prejudice.

Accordingly, we hold that when there has been a substantive violation of Rule 4–361(b), prejudice to the defendant must be presumed and a new trial awarded unless the State can rebut the presumption of prejudice or demonstrate beyond a reasonable doubt that the error was harmless. We recognize that a number of courts have held to the contrary, and have required that a defendant demonstrate actual prejudice in order to obtain a new trial,[3] but we believe the creation of a presumption of prejudice for a violation of this Rule recognizes the importance of compelling compliance with its requirements and recognizes as well the difficulty of proving actual prejudice, yet does not go as far as those courts that prohibit substitution without consent.

---

**3.** *See, e.g., United States v. Lane,* 708 F.2d 1394, 1396–98 (9th Cir.1983); *United States v. Santos,* 588 F.2d 1300, 1303–04 (9th Cir.), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979); *United States v. Boswell,* 565 F.2d 1338, 1341–42 (5th Cir.), *cert. denied,* 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978); *State v. Misner,* 410 N.W.2d 216, 218–19 (Iowa 1987).

In the case before us, substitution took place during cross-examination of the defendant by the State—a critical point in the trial. It occurred prior to the motion for judgment of acquittal, the delivery of instructions to the jury, and closing argument. In the course of these proceedings, the substitute judge was called upon to make a number of substantive rulings, including the extent to which reference to prior convictions of the defendant could be made consistent with an agreement allegedly struck between counsel in the presence of Judge Prevas; a ruling on the defendant's motion for judgment of acquittal; allowance of an instruction on flight over the defendant's objection; and a ruling on whether matters allegedly not in evidence could be raised in closing argument.

The State argues that even if there had been less than full compliance with the Rule, the substitution of the judge did not play "a significant role in influencing the rendition of the verdict, to the prejudice of the [defendant]." *Dorsey v. State,* 276 Md. 638, 653, 350 A.2d 665 (1976). We do not agree. A review of the record reveals that the substitute trial judge's role in this case was not ministerial. He was required to rule on a significant number of substantive issues that should have been ruled on by a judge who had familiarized himself with the record in one of the ways we have discussed. This was not done; the presumption of prejudice to the defendant has not been overcome, and we are unable to conclude that the error was harmless beyond a reasonable doubt. The defendant must be given a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.