*Davon Wilkins v. State of Maryland*, No. 112, September Term, 2021, filed January 26, 2022. Opinion by Berger, J.

**CRIMINAL PROCEDURE — MARYLAND RULE 4-342 — SENTENCING JUDGE:** Ordinarily, the judge who presided over the trial shall sentence the defendant, subject to the provisions of Rule 4-361 (which sets forth procedures to be followed when the original judge is unavailable).

**CRIMINAL PROCEDURE — MARYLAND RULE 4-342 — DEFENDANT'S RIGHT OF ALLOCUTION:** Rule 4-342(e) protects a defendant's right of allocution as well as, more generally, his right to present information in mitigation of punishment.

**CRIMINAL PROCEDURE — MARYLAND RULE 4-342 — DEFENDANT'S RIGHT OF ALLOCUTION:** Where the court provided both parties a full opportunity to present evidence relevant to sentencing, which included a substantially accurate factual summary of the crimes, victim impact testimony, expert testimony on behalf of the defendant, and the defendant's statement expressing his remorse, the court's acknowledgment that, beforehand, it had not familiarized itself with the case did not result in a constructive denial of the defendant's right of allocution.

**CRIMINAL PROCEDURE — MARYLAND RULE 4-342 — REQUIREMENT TO STATE ON THE RECORD REASONS FOR THE SENTENCE IMPOSED:** The court ordinarily shall state on the record its reasons for the sentence imposed. Its failure to do so, however, does not result in an intrinsically illegal sentence, and a claimed violation of this subsection is subject to the contemporaneous objection requirement.

**CRIMINAL PROCEDURE — MARYLAND RULE 4-361 — REPLACEMENT OF JUDGE:** Rule 4-361 sets forth the procedures to be followed when the original judge is unavailable in a criminal case. Part (a) of the rule governs the situation where the trial or plea proceeding has already concluded, whereas part (b) of the rule governs where a judge must be replaced during a jury trial.

**CRIMINAL PROCEDURE — MARYLAND RULE 4-361 — REPLACEMENT OF JUDGE — REQUIREMENTS IMPOSED ON REPLACEMENT JUDGE:** Rule 4-361(a) authorizes the replacement judge to sentence the defendant and perform any other act or duty if satisfied that he or she can properly do so. In contrast, Rule 4-361(b) authorizes the replacement judge to preside over an ongoing jury trial upon certifying that he or she has become familiar with the record of the trial. Ordinarily, a judge who takes over during a jury trial must read, or have read to him or her, a written transcript of the previous proceedings, or in the case of an audio or video record, listen to the prior proceedings; and, moreover, the judge must then file, or dictate into the record, a

certification that he or she has become familiar with the record of trial and include in this certification the means used to gain familiarization. The requirements imposed on a replacement judge by Rule 4-361(b) are considerably greater than those imposed by Rule 4-361(a).

**CRIMINAL PROCEDURE — MARYLAND RULE 4-361 — REPLACEMENT OF JUDGE — DISCRETION OF SENTENCING JUDGE:** A sentencing judge is vested with virtually boundless discretion in devising an appropriate sentence. In this case, the replacement judge, after openly acknowledging that she had not read the trial transcript prior to the resentencing hearing, but then providing both parties a full opportunity to present their respective cases, without objection to the manner in which the court proceeded, did not abuse her discretion in imposing an otherwise lawful sentence.

Circuit Court for Baltimore City
Case No. 111045011

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 112

September Term, 2021

_____

DAVON WILKINS

v.

STATE OF MARYLAND

_____

Berger,
Wells,
Sharer, J. Frederick
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed:  January 26, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In 2012, a jury sitting in the Circuit Court for Baltimore City found appellant, Davon Wilkins, guilty of involuntary manslaughter, use of a handgun in the commission of a crime of violence, and wearing, carrying, and transporting a handgun. The court sentenced Wilkins to 10 years' imprisonment for involuntary manslaughter, a consecutive term of 20 years, the first five without the possibility of parole, for unlawful use of a handgun, and a concurrent term of three years for wearing, carrying, and transporting a handgun. Those judgments were affirmed on direct appeal. *Wilkins v. State*, No. 608, Sept. Term, 2012 (filed Oct. 25, 2013).

Wilkins thereafter sought postconviction relief, and, in 2019, he was awarded a new sentencing hearing. That hearing was held in 2021 and resulted in the re-imposition of his original sentence (with the exception that the conviction for wearing, carrying, and transporting a handgun was merged into that for unlawful use of a handgun). Wilkins now appeals from that ruling, raising two claims: (1) that the sentencing court violated his right of allocution and/or Maryland Rule 4-342; and (2) that the sentencing court abused its discretion in imposing sentence. We shall affirm.

## BACKGROUND

We quote our unreported opinion in Wilkins's direct appeal for context:

> On or about 1:00 a.m. on July 1, 2010, the victim, Renato Broom (hereinafter "Broom"), age 16, was transported by paramedics from the 700 block of West North Avenue in Baltimore City to the University of Maryland Shock Trauma Center. Broom was pronounced dead at 1:28 a.m. The autopsy revealed that Broom had died from a single gunshot wound. The cause of death was homicide. More than five months later, the State charged Wilkins with the murder of Broom and other related charges.

There was little forensic evidence recovered at the scene of the shooting, i.e., a single shell casing, two swabs of suspected blood, several photos taken by the police, and three one-dollar bills.

The State's case was based upon the testimony and identification of Wilkins by two witnesses: A. Simpson and W. Goode. Neither of the witnesses claimed to be in the courtyard during the shooting although they were present in the area that night. Simpson identified Wilkins in a photo array as the shooter and gave a recorded statement about the events leading to the incident. Simpson told the police he saw Wilkins and Broom "fussing about" some money related to a dice game, and Wilkins "was trying to scare" Broom with a gun and he shot him. Simpson stated "it was a[n] accident."

Goode identified Wilkins in a photo array as the person he overheard saying "it was a[n] accident." Goode also gave a recorded statement to this same effect. The photo arrays and recorded statements were admitted by the trial court over objection. The statements came in as prior inconsistent statements to contradict the witnesses' testimony at trial.

In Simpson's recorded statement, he claimed to see everything happen. He saw Broom and his best friend (Wilkins) playing dice. They started fussing about money, Wilkins left and came back with a gun; he was waving it around, trying to scare him (Broom) saying "Yo, give me my mother fucking money back" and "your life is in my hands." Then he (Wilkins) shot his friend – he was trying to scare him. According to Simpson "it was a[n] accident." At the time of the photo array displayed to Simpson, Simpson identified Wilkins and signed his name next to the photo. Additionally, Simpson wrote a comment on the back of the photo array "one summer day on Lennox and Park Ave, Pocket (Broom) and others were shooting dice when things got out of hand and Pocket's best friend (Wilkins) went to get a gun to get his money back and try to scare him. That's when he got shot."

Goode never claimed to have witnessed the shooting but testified that on July 1, 2010, he was at his sister's apartment, located on the first floor of a building on North Avenue. He was in the living room listening to music or watching television

2

when heard loud noises outside and got up to look through the window. Goode saw a lot of people "walking away" and heard somebody screaming "it was an accident" but he didn't "see nobody carrying no gun or running" away.

Although Goode admitted that he heard somebody utter the phrase "it was an accident," he waffled about whether and who he saw uttering those words. At first, Goode maintained that he didn't "see the person's face that said it." Later, he claimed, "it was a couple of guys I seen saying it." When the State asked whether one of those people was the person who Goode had picked out in the photo array, he contended "no, he didn't actually say that, no." After the State prompted Goode about his prior statement when identifying Wilkins's photo, Goode conceded "that's one of the persons who was saying it."

In testimony that referred to both Wilkins and Broom as "the victim," Goode recounted that Wilkins looked emotional and concerned, "like he was trying to get help for somebody." Goode described Wilkins and Broom, both of whom he had known most of his life, as "the best of friends."

At trial, Goode stated that he did not hear a gunshot although he had told the police on July 15, 2010, that he heard a shot before he got up to look out the window. To counteract this conflict in his testimony, the State played Goode's entire taped statement from July 15, 2010, in which he told the police that he identified Wilkins "because that's the one I seen standing, made the statement saying it was an accident." Defense counsel thereafter impeached Goode, with his testimony from the pre-trial suppression hearing, during which he stated that he did not see the person who said it was an accident. Goode admitted that he had "bad memories," and "I'm under, you know, I don't want to tell my personal problems, but I'm going through . . . a little something."

The Defense elected not to present any evidence and Wilkins did not testify on his own behalf. . . . [T]he jury acquitted Wilkins of Murder in the First and Second Degree but found him guilty of Involuntary Manslaughter, Use of a Handgun in a Crime of Violence, and Wearing, Carrying and Transporting a Handgun.

*Wilkins*, slip op. at 2-5.

At sentencing, the trial court expressed its belief that the jury had given Wilkins a "break" in acquitting him of first- and second-degree murder and convicting him instead of the lesser included offense of involuntary manslaughter. Finding that Wilkins had exhibited "no remorse" for the killing, the court imposed the statutory maximum penalties for each offense and ran two of those sentences (for manslaughter and use of a handgun in the commission of a crime of violence) consecutively.

On direct appeal, Wilkins claimed that the trial court, in imposing sentence, improperly had considered conduct for which he had been acquitted. We held that this claim was unpreserved but that, in any event, under *Henry v. State*, 273 Md. 131, 147-48 (1974), the trial court properly could consider such conduct. *Wilkins*, slip op. at 7-14.

In 2016, Wilkins filed a postconviction petition, alleging, among other things, that he had been denied his right of allocution at his sentencing hearing. Ultimately, in 2019, he and the State agreed that he would receive a new sentencing hearing, and, in exchange, he would withdraw his remaining postconviction claims with prejudice. The postconviction court thereafter entered a consent order, memorializing those terms, and, as relevant here, it vacated Wilkins's sentences and remanded the matter for a new sentencing hearing.

On remand, the case was assigned to a different judge because the original judge had retired in the meantime. At Wilkins's resentencing hearing, the court initially expressed uncertainty as to the proper procedure it should follow:

THE COURT: . . . I don't have a problem starting from the beginning. I don't have a problem hearing from all of the witnesses, but you understand that the position that I am in, is that I did not -- I was not the judge for the hearing and I was not Judge Young. I'm Judge Young's replacement.

And so I did not hear the facts of this case. They did not play out in front of me. If I -- even as I look through the transcript, which I did not do, because it did not come to me in a post-conviction. So I -- so my question is, if it's for a right of allocution, is it necessary -- and I tell you, I don't have a problem doing it, -- but is it necessary to have a full sentencing hearing or is the right for him to just allocute?

I can hear from everyone, but please be assured that I am not aware of how this trial took place. I was not present and I'm certain that both of you are going to fill me in as much as you can, but you, as I know, living through a trial and hearing the witnesses and hearing the evidence is different.

So, I just want to be specific, if the issue was that he did not have a right of allocution, should we not give him that right to allocution and then make a determination and argument as it pertains to what the sentence should be from the State and Defense, or should we be starting from the beginning of sentencing, which, I'm not certain puts this Court in any different position. But if you feel as though it does, that's fine, then giving Mr. Wilkins his right of allocution after I hear from both of you and your witnesses.

That's where I'm, I'm not really sure where we are.

The circuit court ultimately decided that the proper procedure was to conduct a full

sentencing hearing:

THE COURT: Yes. I guess at this point, I'm -- the posture of -- where I am with the posture of the case is, you know, we could go forward. You can have your sentencing hearing. You can tell me everything that you want to tell me. Mr. [defense counsel] can tell me everything that he wants to tell. Mr. Wilkins can give his right of allocution and then I'll sentence him appropriately.

5

[DEFENSE COUNSEL]: Your Honor, that -- thank you, Your Honor. That's the approach that we would request be taken.

THE COURT: Okay. All right.

[PROSECUTOR]: Well, I think -- I mean at this point, Your Honor, I have -- you know, I don't want the Court to be uncomfortable and I do want to be sure -- because I thought the Court would have the entire trial file from Judge Young, so I did not --

THE COURT: No. Why would I? I mean, --

[PROSECUTOR]: I assumed --

THE COURT: Judge Young doesn't have a trial file. He just listened to the trial. He just -- he doesn't have a trial file. He didn't have notes. He didn't tell me why he sentenced the way he sentenced. So that's -- so you are -- you have his successor.

He didn't -- Judge Young -- I don't have a note on this. There is no trial notes on this trial for this Court.

There's just a record of the fact that he -- what I have in here is my trial folder, that I made. There are no notes that I have from this trial. So we can go through the sentencing. You've got the post-conviction and we'll go from there.

The court then conducted a full sentencing hearing. After the clerk informed the court of the charges on which the jury had found Wilkins guilty (involuntary manslaughter, use of a handgun in the commission of a crime of violence, and wearing, carrying, and transporting a handgun) and the original sentences (and the court observed that there had been an erroneous failure to merge the handgun offenses), the prosecutor summarized the facts of the case:

6

Your Honor, this case involved the shooting of the victim, [Renato] Broom, by the defendant. There was -- the facts produced at trial showed that the defendant, on July 1st of 2010 at around 12:48 in the morning, was playing dice with some people in the neighborhood, including the victim, Mr. Broom.

During the course of that argument -- during the course of the dice game, an argument ensued. The defendant left and returned with a loaded handgun and fired a single shot, shooting the victim once, through the shoulder, through the body and out the right side of his armpit, during an argument over the dice game.

As the defendant and his friends were leaving the dice game, where Mr. Broom would later succumb to his injuries, he was heard by a witness that it was an accident, as he walked past an open window. A witness, Mr. Goode, testified that at trial.

The State believes and argued back then, these are serious facts, obviously, and we're going to hear from the social worker, so some of this argument, you know, may come up again.

But at the time of this case, both of these individuals were young. Mr. Broom was, I believe, 15 at the time and Mr. Wilkins was, if I remember correctly, 19 at the time.

Mr. Wilkins was on probation at the time of this offense for a second degree assault, where he was alleged to have -- or where he was convicted of beating up a special needs child. A VOP warrant was outstanding at the time of this shooting.

The defendant also had a juvenile record, which at the time, was relevant. He had two fact sustained as a juvenile.

The State believes that the defendant received a fair sentence back then and is asking for the same sentence again today. Ten years on involuntary manslaughter with 20 years consecutive for the handgun used in the commission of a crime of violence.

7

It's always interesting when we end up in cases like this, so much later returning -- I've had a couple in the last few months and it's interesting, because we're in a different position. We're hearing now not just about the facts of the offense as alleged, but we'll be hearing, presumably, also about the defendant's record since then. What he's done in prison to, you know, show that he has taken the facts seriously. To show that he has tried to engage in some sort of -- I don't know what the right word it -- receiving assistance for the factors that caused him to shoot Mr. Broom in the first place.

But I still think we are in the position of a re-sentencing based on these facts, which have not changed. The fact is Mr. Broom is still dead. His family is still suffering the consequences of losing him.

Thereafter, the victim's sisters testified, pointing out, among other things, that Wilkins had left the dice game and returned with the handgun, belying his claim of accident, and that Wilkins had bullied the victim in the past.

The defense then presented evidence in mitigation. Defense counsel conceded the accuracy of the prosecution's statement of facts but declared that the shooting had been accidental. The defense then called a social worker who had been retained to examine the case. She had performed a psycho-social assessment of Wilkins and determined that he suffered from a "[p]oor parent/child relationship" because he had been raised by an impoverished, single mother; that he had engaged in "delinquent behavior"; but that, since making a "horrible mistake," that is, killing Mr. Broom, he had worked to become a "role model" for "other incarcerated young men." Then, Wilkins exercised his right of allocution, expressing remorse for killing Mr. Broom and declaring that he stood before the court "a fixed man" who deserved a second chance. The defense's case in mitigation

8

concluded with counsel's request that the court consider a sentence in the range of 15-16 years of active incarceration and up to 10 years of suspended time.[1]

Having heard the argument and considered the evidence as summarized above, the court imposed the following sentence:

> As to Court IV, involuntary Manslaughter, with the start date remaining, I'm sorry, January the 19th, 2011, the sentence of this Court is ten years.
>
> As to Count II, use of a handgun in the commission of a felony or crime of violence, Count II, with a start date of January the 19th, 2011, the sentence of this Court is 20 years, the first five years without the possibility of parole, which is to run consecutive to Count IV.
>
> As to the wear, carry and transport of a handgun, this Court makes the finding that it, in fact, merges with the use of a handgun in the commission of a felony, in compliance with the Wilkins' case, as well as the Crowder case.[2]

This timely appeal followed.

---

[1] In addition, more than seven months prior to the resentencing hearing, defense counsel filed a sentencing memorandum that further outlined his arguments in favor of a reduced sentence.

[2] The court was referring to *State v. Wilkins*, 343 Md. 444 (1996) (per curiam) (unrelated to appellant in this case), and *Crowder v. State*, No. 2403, Sept. Term, 2018 (unreported, filed Aug. 10, 2020), both of which held that wearing, carrying, and transporting a handgun merges into use of a handgun in the commission of a felony or crime of violence.

## DISCUSSION

## I.

Wilkins contends that he was provided his right of allocution only in form, not in substance. According to Wilkins, the resentencing judge acknowledged that "she did not know the facts of the case" and that "she had not read the trial transcript," from which he invites us to conclude that the resentencing judge "had apparently studiously ignored the facts of this case." Not only did this "effectively depriv[e] him of his right of allocution under Rule 4-342(e)," Wilkins asserts, but the court furthermore failed to "state on the record its reasons for the sentence imposed," in violation of Rule 4-342(f). These contentions are without merit.

We begin[3] with Maryland Rule 4-342, which applies to sentencing upon the conclusion of a criminal trial or plea proceeding, and provides in part:

* * *

> **(b) Judge.** If the defendant's guilt is established after a trial has commenced, the judge who presided shall sentence the

---

[3] The State points out that Wilkins did not claim, during the resentencing hearing, that the judge's purported lack of preparation effectively denied him his right of allocution, and therefore, it contends, this claim is unpreserved. To address the State's non-preservation argument would require us to decide whether denial of the right of allocution results in an inherently illegal sentence (because that would obviate any preservation requirement), which appears to be an open question in Maryland. *But see State v. Wilkins*, 393 Md. 269, 275 (2006) (suggesting, in strong dicta, that the denial of the right of allocution does not result in an inherently illegal sentence). To avoid addressing whether denial of the right of allocution results in an inherent illegality, and because both parties have briefed the matter fully (after all, the whole point of the resentencing was to ensure that Wilkins could exercise his right of allocution, which previously had been denied), we shall exercise our discretion and address the merits of this claim. Md. Rule 8-131(a).

10

defendant. If a defendant enters a plea of guilty or nolo contendere before trial, any judge may sentence the defendant except that, the judge who directed entry of the plea shall sentence the defendant if that judge has received any matter, other than a statement of the mere facts of the offense, which would be relevant to determining the proper sentence. This section is subject to the provisions of Rule 4-361.

\* \* \*

**(e) Allocution and Information in Mitigation.** Before imposing sentence, the court shall afford the defendant the opportunity, personally and through counsel, to make a statement and to present information in mitigation of punishment.

**(f) Reasons.** The court ordinarily shall state on the record its reasons for the sentence imposed.

\* \* \*

In the instant case, the original sentencing judge had retired during the time between Wilkins's trial and his resentencing. Accordingly, the case was assigned to a new judge for the resentencing, under Rules 4-342(b) and 4-361(a).[4]

Although the replacement judge acknowledged initially her unfamiliarity with the case, the sentencing hearing that followed provided both parties a full opportunity to present evidence relevant to sentencing. Not only did the prosecutor summarize the facts of the crimes, but defense counsel conceded that the prosecutor's summary was substantially accurate. The prosecutor presented victim impact testimony, and the defense presented testimony in mitigation by a social worker it had chosen for that purpose.

---

[4] We shall discuss Rule 4-361 in more detail in Part II of this opinion, which addresses Wilkins's other assignment of error.

11

Finally, Wilkins was provided his opportunity to address the court, which he did. Only after all this did the court impose sentence. Nothing about this procedure was a sham. Wilkins was provided a full and fair opportunity to present his case, but merely because the replacement judge imposed the maximum possible sentence does not mean that his opportunity was in any sense an empty gesture.[5] The court did not infringe Wilkins's right of allocution.

As for Wilkins's claim that the circuit court violated Rule 4-342(f) because it failed to state its reasons on the record, we note that defense counsel did not raise this issue at sentencing. Therefore, it is not preserved, and we shall not address it.[6] *See*, *e.g.*, *Reiger v.*

---

[5] We cannot help but note the apt observation of the original sentencing judge, who declared that the jury had given Wilkins a "break" in acquitting him of first- and second-degree murder and convicting him instead of involuntary manslaughter. Although the record suggests that the replacement judge was unaware of this observation by her predecessor, she nonetheless heard evidence, in the State's uncontested summary, that Wilkins had left the scene and returned with a weapon. Clearly, she could properly take that into account in imposing sentence. Nor was Wilkins a first-time offender, as the State's presentation made clear. We reject Wilkins's suggestion that the sentence imposed (which was the same as the original sentence except for the merger error) is evidence that the replacement judge merely deferred to the decision of the original judge without exercising her own discretion.

[6] We note in passing that Rule 4-342(f) contains mandatory language. ("The court ordinarily shall state on the record its reasons for the sentence imposed.") That language, however, is qualified by the word "ordinarily." In other contexts, the term "ordinarily" has been recognized as creating an exception to the general rule otherwise stated. *See*, *e.g.*, *Jones v. State*, 379 Md. 704, 712-13 (2004) (explaining that the term "ordinarily" in Rule 8-131(a) implies there are exceptions to the general rule that an appellate court will not consider unpreserved issues). Because the term "ordinarily" means that Rule 4-342(f) does not state an "absolute" requirement, *Jones*, 379 Md. at 712, it follows that a violation of Rule 4-342(f) does not result in an illegal sentence, and it is therefore subject to the contemporaneous objection rule. *See Juan Pablo B. v. State*, 252 Md. App. 624, 642-51 (2021) (examining when a violation of a mandatory Maryland Rule of Procedure results in

12

*State*, 170 Md. App. 693, 698-702 (2006) (holding that the failure to object at sentencing results in waiver of a claim that a court had relied upon improper considerations in imposing sentence).

## II.

We turn next to Wilkins's claim that the circuit court abused its discretion in resentencing him. The gravamen of that claim is that the replacement judge failed to familiarize herself with the record prior to the resentencing hearing, which, according to Wilkins, violated Rule 4-361.

Wilkins acknowledges that the replacement that occurred in this case was governed by Rule 4-361(a) (which, as we shall explain, imposes a less stringent condition on the replacement judge than Rule 4-361(b)), but he then attempts to shoehorn this case into Rule 4-361(b), declaring: "Surely, whatever distinction may lie between these two sub-provisions of Rule 4-361, it cannot be that a sentencing court may engage in studied ignorance of the record of the trial which she took no part in." Relying upon *Hood v. State*, 334 Md. 52 (1994), a case that applied Rule 4-361(b), he asserts that, because the resentencing judge purportedly ignored the facts and circumstances of the trial record, she denied him "a meaningful opportunity to present information in mitigation." He concludes that prejudice must be presumed and that we must vacate and remand for a new sentencing hearing.

---

an inherently illegal sentence), *cert. filed*, Pet. No. 331, Sept. Term, 2021 (filed Nov. 16, 2021).

Initially, we observe that Wilkins did not raise this claim before the resentencing court. Because a violation of Rule 4-361 does not result in an inherently illegal sentence,[7] a contemporaneous objection was required. This claim is therefore unpreserved. Even if it had been preserved, we would hold that it has no merit.

Maryland Rule 4-361, which applies in case of a disability of a judge, as occurred here, provides:

> **(a)  After Verdict or Acceptance of Plea.**  If by reason of termination of office, death, sickness, or other disability, the judge before whom a defendant has been tried or by whom a plea of guilty or nolo contendere has been accepted is unable to perform an act or duty of the court after verdict or after acceptance of a plea, any other judge authorized to act in that court may sentence the defendant and perform any other act or duty if satisfied that he or she can properly do so.
>
> **(b)  During Jury Trial in Circuit Court.**  If by reason of termination of office, absence, death, sickness, or other disability, the judge before whom a jury trial in circuit court has commenced is unable to proceed with the trial, any other judge authorized to act in that court upon certifying that he or she has become familiar with the record of the trial, may proceed with and finish the trial.

---

[7] In *Hood*, the Court of Appeals stated that the harmless error rule applies to a violation of Rule 4-361(b) (albeit under circumstances where it may be difficult to show harmlessness). *Hood*, 334 Md. at 62-63. *See also Dove v. State*, 415 Md. 727, 741-42 (2010) (observing that the harmless error rule generally applies to violations of the Maryland Rules). That implies that a claimed violation of Rule 4-361(b) is subject to the contemporaneous objection rule because generally, preserved claims of error are reviewed for harmless error, and unpreserved claims of error may be reviewed for plain error. *See*, *e.g.*, *Greer v. United States*, 593 U.S. __, 141 S. Ct. 2090, 2099 (2021). By contrast, illegal sentence claims are not subject to the contemporaneous objection rule. *Reiger*, 170 Md. App. at 700. Nor is an illegal sentence claim subject to the harmless error rule; if a sentence is inherently illegal, it may be corrected "at any time." Md. Rule 4-345(a).

14

Rule 4-361(a) requires the replacement judge to satisfy herself that "she can properly" perform her required duties, whereas Rule 4-361(b) requires the replacement judge to "certify[] that . . . she has become familiar with the record of the trial." Clearly, more is required of a judge who is replaced during trial than one who is replaced after a verdict has been rendered. Although *Hood* does not compare Rule 4-361(a) and Rule 4-361(b), it nonetheless suggests why the subparts of the rule impose different requirements on a replacement judge. Thus, a replacement judge who is expected to assume management of an ongoing trial must have "a sufficient grasp of the prior testimony and proceedings to be able to fairly and effectively exercise his or her discretion with respect to rulings thereafter required, and to properly instruct the jury." *Hood*, 334 Md. at 58. To ensure that is the case, Rule 4-361(b) "ordinarily" requires a replacement judge "to read, or to have read to him or her, a written transcript of the previous proceedings, or in the case of an audio or video record, to listen to the prior proceedings." *Hood*, 334 Md. at 58. Moreover, the judge "must then file, or dictate into the record, a certification that he or she has become familiar with the record of trial" and "include in this certification the means used to gain familiarization" so as to provide an opportunity for a timely objection, if a party believes that the "method employed is inadequate." *Id.*

By contrast, Rule 4-361(a), which applies here, merely requires the replacement judge to satisfy herself that she can "properly" perform her duties. In other words, Rule 4-361(a) provides that the replacement judge self-monitor her compliance with the rule. This is a considerably less stringent requirement than that of Rule 4-361(b). We decline Wilkins's suggestion that we import the more demanding standards of Rule 4-361(b) into

15

a case governed by Rule 4-361(a). Given the "general presumption that judges know the law and apply it properly," *State v. Chaney*, 375 Md. 168, 182 (2003), we conclude that the replacement judge apparently was satisfied that she could properly perform her duties, and Wilkins has failed to rebut that presumption.

A "sentencing judge is vested with virtually boundless discretion in devising an appropriate sentence." *Cruz-Quintanilla v. State*, 455 Md. 35, 40 (2017) (citation and quotation omitted). That discretion, however, "is not without limits." *Id.* at 41.[8] To find, however, that the resentencing court abused its discretion, we would have to conclude that its actions were "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Mainor v. State*, 475 Md. 487, 494 (2021) (citation and quotation omitted).

In the instant case, the replacement judge openly acknowledged that she had not read the trial transcript prior to the resentencing hearing. She then declared that both parties would have a full opportunity to present their respective cases, which they did. At no point did anyone object to the manner in which the court proceeded. Under these circumstances,

---

[8] The Court stated three grounds on which a defendant may challenge his sentence: "(1) whether the sentence constitutes cruel and unusual punishment or violates other constitutional requirements; (2) whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations; and (3) whether the sentence is within statutory limits." *Cruz-Quintanilla*, 455 Md. at 41 (citation and quotation omitted). None of those grounds is raised in this case. That does not mean that Wilkins's claims are not cognizable. He has not, however, demonstrated that the resentencing court either erred or abused its discretion.

we conclude that the court's actions were not "manifestly unreasonable," and it therefore

did not abuse its discretion.[9]  *Id.*

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS ASSESSED TO APPELLANT.**

---

[9] We reject Wilkins's attempt to repackage his unpreserved claim of a violation of Rule 4-342(f) (the resentencing court's failure to state its reasons on the record) under the guise of a claim of abuse of discretion.